[No. A034885. First Dist., Div. Three. Dec. 4, 1986.]

In re RICHARD HOGAN on Habeas Corpus.

**COUNSEL**

John K. Van de Kamp, Attorney General, Blair W. Hoffman and Aileen Bunney, Deputy Attorneys General, for Appellant.

Donald Specter, under appointment by the Court of Appeal, for Respondent.

**OPINION**

**SCOTT, J.**—Petitioner and respondent Richard Hogan (petitioner) is a Canadian Indian incarcerated in San Quentin State Prison. In 1981, he was convicted of first degree murder (Pen. Code, § 187) and sentenced to an indeterminate term of 25 years to life with a 1-year enhancement. He seeks to transfer to Canada to complete his sentence pursuant to the Treaty Between the United States of America and Canada on the Execution of Penal Sentences

(Treaty).[1] We find that petitioner is ineligible for transfer under the Treaty at this time because his sentence remains indeterminate.

I

*Legal and Procedural Background*

The Treaty authorizes the transfer of certain convicted and sentenced individuals (offenders) to their country of origin for completion of their sentences.  ■  A primary objective of the Treaty is to promote more effective social rehabilitation of offenders and parolees. (See Sen.Rep. No. 95-10, 1st Sess., p. 3 (1977).) Unlike the enactment of a similar treaty with Mexico,[2] the enactment of the Treaty was not motivated by adverse prison conditions in either the United States or Canada. (*Ibid.*)

Pursuant to the Treaty, a transfer does not alter the term of the sentence imposed on the offender. The "Receiving State" (the country receiving the offender) must give legal effect to the sentence imposed by the "Sending State" (the country transferring the offender). (Treaty, art. III, § 9.) The receiving state generally has no authority to modify a sentence of the sending state. (Treaty, art. V; see *Kanasola* v. *Civiletti* (6th Cir. 1980) 630 F.2d 472, 474.)

Article III, section 7, of the Treaty is the subject of this appeal. Section 7 provides that only certain offenders designated therein are eligible for transfer: (a) one who is under a sentence of "imprisonment for life;" or (b) one whose sentence "states a definite termination date, or the authorities authorized to fix such a date have so acted;" or (c) a juvenile offender; or (d) a dangerous or habitual offender subject to indefinite confinement.

In 1984, petitioner requested to transfer to Canada, asserting that he was subject to a sentence of "imprisonment for life." The Board of Prison Terms (Board)[3] denied his request on the ground that his sentence remained indeterminate. The Board informed him that once it established a release date for him, he would be eligible for transfer to complete the term of his sentence in Canada. In response, petitioner filed a petition for writ of habeas corpus

---

[1]July 19, 1978, 30 United States Treaties and Other International Agreements 6263; Treaties and Other International Acts Series 9552.

[2]The United States entered into a similar treaty with Mexico (Treaty Between the United States of America and the United Mexican States on the Execution of Penal Sentences, Nov. 30, 1977, 28 U.S.T. 7399, T.I.A.S. 8718).

[3]Under federal legislation implementing the Treaty (18 U.S.C. § 4100 et seq.), the United States Attorney General has delegated authority to the Board and its designees to transfer offenders "in compliance with the conditions of the treaty." (28 C.F.R. § 527.40 (1986).)

in the Superior Court of the County of Marin against the Board, the Director of the Department of Corrections, and the Warden of San Quentin (collectively referred to as Board), challenging the Board's decision. The superior court issued a writ directing the Board to complete the transfer. This appeal by the People ensued.

## II

### *Issue and Standard of Review on Appeal*

The facts in this case are not in dispute. The only issue is one of law—the interpretation of a statute. We therefore undertake an independent review of the lower court's order. (*Verdugo Woodlands Homeowners etc. Assn.* v. *City of Glendale* (1986) 179 Cal.App.3d 696, 702 [224 Cal.Rptr. 903]; *San Diego Union* v. *City Council* (1983) 146 Cal.App.3d 947, 952 [196 Cal.Rptr. 45].)

In issue is whether petitioner's indeterminate term of 26 years to life constitutes a sentence of "imprisonment for life" under article III, section 7, subdivision (a), of the Treaty, or an indeterminate term which remains to be "fixed" under subdivision (b). In reviewing this issue, we give weight to the interpretation of the governmental agency—in this case, the Board—charged with implementing the Treaty provisions. (*Udall* v. *Tallman* (1965) 380 U.S. 1, 16 [13 L.Ed.2d 616, 625, 85 S.Ct. 792]; *Kolovrat* v. *Oregon* (1961) 366 U.S. 187, 194 [6 L.Ed.2d 218, 223, 81 S.Ct. 922].)

## III

### *Discussion*

Interpretation of the provisions of an international treaty must begin with the specific language of the treaty itself: "The clear import of treaty language controls unless 'application of the words of the treaty according to their obvious meaning effects a result inconsistent with the intent or expectations of its signatories.' [Citations.]" (*Sumitomo Shoji America, Inc.* v. *Avagliano* (1982) 457 U.S. 176, 180 [72 L.Ed.2d 765, 770, 102 S.Ct. 2374].)

Here, the initial words of article III, section 7—"No Offender shall be transferred unless: . . ."—establish that eligibility for transfer is strictly limited to those offenders subject to a sentence described in section 7, subdivisions (a) through (d).

Section 7, subdivision (b), describes a sentence which "states a definite termination date, or the authorities authorized to fix such a date

have so acted . . . ." The "clear import" of this language encompasses a sentence having a definite termination date, or which had no definite termination date at the time of the sentencing, but which penal authorities such as the Board subsequently have rendered definite.

Article III, section 8, confirms that the term of the sentence must be definite before an offender is eligible for transfer.[4] That section provides that at the time of the transfer, the sending state must furnish to the receiving state the *termination date* of the sentence.

Here, petitioner's sentence—26 years to life—has no definite termination date. Although California's Uniform Determinate Sentencing Act of 1976[5] changed sentences for most felonies to terms of definite duration, the term of 25 years to life for first degree murder remains indeterminate. (See Pen. Code, § 190.) The Board is the only authority authorized to set the duration of the term. Under Penal Code section 3041, one year prior to an offender's minimum eligible parole release date, the Board either sets the release date or, because of public safety considerations, defers setting the release date. (Pen. Code, § 3041, subds. (a) and (b).) In contrast, with offenders serving determinate sentences, the Board does not have similar absolute discretion to set the release date. (See Pen. Code, § 3049.)

The Board, in setting the release date for an indeterminate sentence, performs the same function as does the trial court in ordering a determinate sentence—it fixes a term of definite duration. The Board's determination is based upon the same criteria which govern determinate sentencing,[6] including the need to provide uniform terms for offenses of similar magnitude and gravity, the number of victims of the crime, and other factors in mitigation or aggravation of the crime. (Pen. Code, § 3041, subd. (a).)

The Board, therefore, is the authority which will "fix [a definite termination] date" under subdivision (b) of article III. Once it does so, petitioner will be eligible to transfer to Canada to serve the remainder of his period of imprisonment and parole.

Such application of section 7 is not inconsistent with the objective of the Treaty. As previously stated, Canada's primary concern in enacting the

---

[4] The only offender subject to an *indefinite* sentence who is eligible for transfer under section 7 is "a dangerous or habitual Offender." (§ 7, subd. (d).) Petitioner does not claim he is eligible for transfer under this subdivision.

[5] Penal Code section 1170 et seq.; Statutes 1976, chapter 1139, section 273, pages 5140-5146.

[6] Penal Code section 1170, subdivision (a)(1), states that determinate sentences provide terms proportionate to the seriousness of the offense with uniformity in the sentences of offenders committing the same offense under similar circumstances.

Treaty was not prison abuse, but the rehabilitation of parolees in Canada. (Sen.Rep. No. 95-10, 1st Sess., p. 3 (1977).) Once petitioner's release date is fixed, he will return to Canada, and his parole, including the date of its commencement, will be governed by the laws of Canada. (Treaty, art. IV.) Such application of section 7 is consistent with the other provisions of the Treaty and implementing legislation, pursuant to which the sending state has exclusive jurisdiction to determine the sentence term. (See Treaty, art. V; 18 U.S.C. §§ 4105(a), 4107(b)(1), and 4108(b)(1).)

■ Petitioner's contention that his indeterminate sentence constitutes a sentence of "imprisonment for life" under subdivision (a) is inconsistent with the "clear import" of all provisions of the Treaty construed as a whole. First, his interpretation of "imprisonment for life" is not supported by its plain meaning or the legislation implementing the Treaty. "Imprisonment" is defined under 18 United States Code section 4101 as the penalty under which an individual is confined to an institution. The common meaning of "life" is the duration of one's existence. Neither the Treaty nor the implementing legislation define this term as a period of confinement of potentially shorter duration than one's life.

■ Second, the interpretation of an international treaty is governed by federal law. (*United States* v. *Belmont* (1937) 301 U.S. 324, 331-332 [81 L.Ed. 1134, 1139-1140, 57 S.Ct. 758].) ■ Under federal criminal statutes, a sentence of "life imprisonment" is a determinate term of the period of one's life, not an indeterminate number of years. For example, 18 United States Code section 3559(a)(1) provides that the maximum term of imprisonment for a crime is "life imprisonment"; the next most punitive term is "twenty years or more," an indeterminate term such as the term petitioner presently is serving.

Title 18, United States Code section 4205 also makes a clear distinction between a determinate life term or a term of a definite number of years, on the one hand, and an indeterminate term, on the other hand. Section 4205(a) sets the minimum parole eligibility date of an offender serving a definite term, which includes a life term. Section 4205(b) governs the minimum parole eligibility dates for indeterminate terms, which include terms having a minimum and maximum number of years, and terms where the parole board has complete discretion to determine the release date. (See *Edwards* v. *United States* (8th Cir. 1978) 574 F.2d 937, 941.) Thus, under federal law, when, as here, the parole board has the absolute authority to set the release date, the sentence is not a determinate life term.

The interpretation of "life imprisonment" under federal law as opposed to state law is warranted by the fact that different states give different

meanings to the term "life imprisonment." (See, e.g., *Com.* v. *Perez* (1983) 390 Mass. 308 [455 N.E.2d 632, 640] ["life imprisonment" for second degree murder signified indeterminate term with eligibility for parole after fifteen years]; *State of Louisiana* v. *Foley* (La. 1984) 456 So.2d 979, 983-984 ["life imprisonment" signified life term without benefit of parole].) Accordingly, the application of a state's definition of life imprisonment in determining an offender's eligibility for transfer would result in disparate treatment under the Treaty of offenders subject to similar sentences. **(8)** A court, in construing the terms of a treaty, must seek an interpretation which avoids such disparity and which affords uniform application. (See *Sumitomo Shoji America, Inc.* v. *Avagliano, supra,* 457 U.S. at p. 185, fn. 11 [72 L.Ed.2d at pp. 772-773].)

■ The provisions of subdivision (b) would have little meaning if an indeterminate term of 26 years to life constituted a term of "life imprisonment." Following petitioner's interpretation, an indeterminate term of 1 to 10 years would constitute a determinate term of 10 years. *All* terms would be definite. The provisions of subdivision (b), which require a definite term of years, or one rendered definite subsequent to sentencing as a condition to transfer, would have no significance. ■ In construing a statute, courts must avoid a construction which renders certain words or provisions meaningless or unnecessary. (See *Sumitomo Shoji America, Inc.* v. *Avagliano, supra,* 457 U.S. at p. 185, fn. 11 [72 L.Ed.2d at pp. 772-773]; *Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 489 [134 Cal.Rptr. 630, 556 P.2d 1081].)

■ Petitioner's final argument is that the denial of his transfer at this time is inconsistent with article IV, section 1, of the Treaty. Article IV, section 1, provides that ". . . the completion of a transferred Offender's sentence shall be carried out according to the laws and procedures of the Receiving State, including the application of any provisions for reduction of the term of confinement by parole . . . ." Petitioner argues that although he does not yet have a parole release date, under article IV, section 1, the Canadian authorities are authorized to set the release date after his transfer.

Under article IV, when an offender serving a determinate sentence transfers to Canada, the Canadian authorities determine his parole release date *based upon the term imposed by the United States,* but in accordance with Canadian laws, including any provisions for an increase or reduction of his term of confinement. (See *Boyden* v. *Bell* (9th Cir. 1980) 631 F.2d 120 [upon offender's transfer to the United States, authorities could recalculate offender's remission credits under United States law so as to increase his term of confinement, where they did not alter the term of the sentence imposed by Canada].) Thus, article IV gives Canada no authority to deter-

mine the term of a sentence. With an offender subject to an indeterminate sentence, the Board, in setting the parole release date, essentially "fixes" the term of the sentence. Transferring petitioner to Canada at this time would permit Canadian authorities to determine the term of his sentence. Neither the Treaty nor federal implementing legislation authorizes such delegation of authority.

Once the Board fixes petitioner's release date, he is eligible for transfer, and the Canadian authorities may increase or reduce his remaining term of confinement if authorized to do so under Canadian law.

For the foregoing reasons, we find that the Board's determination that petitioner is ineligible for transfer at this time was correct. The lower court's order granting the petition for writ of habeas corpus is reversed and remanded with directions that the petition be denied.

White, P. J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied January 5, 1987, and respondent's petition for review by the Supreme Court was denied April 2, 1987.