OPINION
The People appeal from an order of the superior court ending Ernest Smith's parole on the ground that he had completed his parole requirements. The People argue that the procedure by which the superior court issued its order was defective, and, substantively, that Smith must remain on parole because he has not satisfied the time requirements of his parole term. We will affirm the order.
 FACTS AND PROCEDURAL BACKGROUND
The facts and procedural background in this case are undisputed. Smith was convicted in 1980 of committing second degree murder earlier that year. In 2001, the then named Board of Prison Terms[1] (hereinafter parole board) and that board's review committee found Smith eligible for parole. (In reSmith (2003) 114 Cal.App.4th 343, 349, 351
[7 Cal.Rptr.3d 655].) The parole board set Smith's base term of imprisonment for the murder at 20 years. (Id. at p. 356.)
The Governor, as authorized by statute, reversed the parole board's decision. (Pen. Code, § 3041.2.) The superior court granted a petition for writ of habeas corpus by Smith challenging the Governor's decision, and ordered him released forthwith. In 2003, we reversed the superior court's order granting the petition. But, favorably to Smith, we reinstated the parole board's decision that made Smith eligible for parole and ordered the superior court to enter another order directing the Governor to vacate his decision reversing the parole board's decision granting parole to Smith. We gave the Governor another opportunity to review the parole board's decision. (In reSmith, supra, 114 Cal.App.4th at pp. 349, 374-375.)
In an order filed on February 27, 2004, the superior court complied with our directions, and on March 25, 2004, the Governor announced that he would not review the parole board's decision. On April 1, 2004, a few days after the Governor's new determination, Smith was released to serve five years on parole. On November 16, 2005, Smith filed a postjudgment motion arguing that his parole should be ended because the length of his time in prison, combined with credits he received for confinement in jail and for good behavior, exceeded the amount of time he was required to be in actual custody behind prison walls or the constructive custody that parole constitutes (Pen. Code, §3056; People v. Nicholson (2004) 123 Cal.App.4th 823,830 [20 Cal.Rptr.3d 476]). The superior court treated Smith's motion as a petition for *Page 454 
writ of habeas corpus and ordered the People to show cause why Smith should not be immediately discharged from parole. On April 28, 2006, the court filed an order that stated: "For the reasons stated in the petition (motion) and traverse, habeas relief is granted. Petitioner's parole is hereby terminated and he is discharged free and clear." The People filed notice of appeal and also a petition for writ of supersedeas on May 23, 2006. The latter sought a stay of the court's order. On September 28, 2006, we granted the petition for writ of supersedeas, staying the order until final determination of the People's appeal, which in the meantime the People had properly brought under Penal Code section 1506. We now address the merits of the People's contentions on appeal.
 DISCUSSION
I. Procedural Considerations
The People contend that Smith's postjudgment motion should have been denied because it presented a claim not raised in his prior habeas corpus petition (considered by this court in In reSmith, supra, 114 Cal.App.4th 343) and that case was closed. The People base this contention on a conclusory argument that the superior court did not choose to treat Smith's motion as a new petition for writ of habeas corpus. Rather, the record shows that the court did treat Smith's motion as a new habeas corpus petition. And it had the power to do so. (People v.DeVore (1990) 218 Cal.App.3d 1316, 1318-1319
[267 Cal.Rptr. 698].)
Next, the People contend that because Smith's postjudgment motion was not verified, it could not be construed as a properly filed petition for writ of habeas corpus. This claim is forfeited. The People do not contend that they complained of the form of Smith's motion either before or after the superior court elected to treat his filing as a habeas corpus petition. InIn re Linda D. (1970) 3 Cal.App.3d 567
[83 Cal.Rptr. 544], the court held: "It is the rule that the failure to verify a petition to have a minor declared a ward of the juvenile court is a defect in the pleading which does not go to the court's jurisdiction and must be raised prior to the hearing or it is waived." (Id. at p. 571.) Similarly, the People's claim that Smith failed to verify the motion that the superior court treated as a petition for writ of habeas corpus is forfeited on appeal. "[N]o objection having been made in the trial court, it is now too late to raise the question of the insufficiency of the petition." (In re Davis (1930) 110 Cal.App. 616,617 [294 P. 408].) *Page 455 
 II. The Question Whether Smith Is Entitled to Have His Parole Status Ended
The question before us is primarily one of construing the statutes, regulations, and decisional law governing the application of sentence credits to parole status in light of this case's undisputed facts. For that reason alone, we review the superior court's order de novo. (See Delfino v. AgilentTechnologies, Inc. (2006) 145 Cal.App.4th 790, 797
[52 Cal.Rptr.3d 376] ["As we have acknowledged, `[construction and application of a statute involve questions of law, which require independent review.'"].) In addition, in considering Smith's petition for writ of habeas corpus, "`the court below did not conduct an evidentiary hearing but reached its decision based on the exhibits attached to the petition and return. Under the circumstances, we shall independently review the record.'" (In re Lowe (2005) 130 Cal.App.4th 1405, 1420
[31 Cal.Rptr.3d 1]; see also id. at p. 1421.)
The People present us with a technical argument about the possible dates on which Smith became eligible for parole. In the People's view, although the parole board determined in 2001 that Smith's base term was 20 years, reduced for good conduct credits earned while in custody, Smith's entitlement to parole did not mature until March 25, 2004, when the Governor, on a second review of Smith's case, elected not to review the parole board's decision to parole him.
The People's argument misses the point. The question that was before the superior court and is now before us is simpler than that. It rests not on when Smith perfected his entitlement to parole, but on the length of Smith's time in actual custody (confinement) and constructive custody (parole), juxtaposed against the credits he earned. It is a matter of simple arithmetic, and as alluded to, the arithmetical facts are undisputed. Smith's term of imprisonment was 20 years. (Inre Smith, supra, 114 Cal.App.4th at p. 356.) Smith calculates that he has constructively served 32 years nine months, arrived at by adding the following time periods: 23 years six months of credit for his time in prison (see Pen. Code, § 2900, subd. (c)), 17 months of credits for his time in custody before prison (see id., § 2900.5, subd. (a)), and 94 months of postconviction credits for good conduct (see Cal. Code Regs., tit. 15, § 2410). Although the record is not ideally complete, making it difficult for us to confirm Smith's calculations to the day, the People do not dispute these figures, and they are undoubtedly well aware that it is incumbent on them to do so if they wish to challenge them, for an "`appellate court is not required to search the record on its own seeking error.'" (Nwosu v. Uba (2004)122 Cal.App.4th 1229, 1246 [19 Cal.Rptr.3d 416].) Moreover, the People could *Page 456 
not reasonably dispute Smith's calculations in any material sense. The following facts support them. The record in In reSmith, supra, 114 Cal.App.4th 343, which we have retained in our files and of which we take judicial notice (Evid. Code, §§ 452, subd. (d), 459, subd. (a)), shows that the superior court in that case found on December 6, 2002, that Smith had then been in custody for more than 22 years. The record in Smith also shows that the parole board, in the course of imposing on Smith a base term of imprisonment of 20 years, gave him 79 months (i.e., six years and seven months) of postconviction credits, evidently for good conduct, which reduced Smith's required imprisonment to 161 months (i.e., 13 years and five months). Finally, in ordering Smith's parole terminated forthwith, the superior court in the case before us had before it Smith's computation in his postjudgment motion that, based on a calculation of his confinement through February of 2004 (in fact he was confined until April 1, 2004), he was also entitled to have either 87 or 89 months of postconviction credits, evidently for good conduct applied against his 20-year base term. In their return to the order to show cause, the People admitted the truth of Smith's computations, which were by then being treated as allegations made in support of a petition for writ of habeas corpus. In light of the posture of the case, we accept Smith's current figures as sufficiently accurate for us to be able to decide the People's appeal.
When the parole board set Smith's base term of imprisonment at 20 years, that term became his prescribed punishment. "The Board, in setting the release date for an indeterminate sentence, performs the same function as does the trial court in ordering a determinate sentence — it fixes a term of definite duration." (In re Hogan (1986) 187 Cal.App.3d 819, 824
[232 Cal.Rptr. 90].) Against that, Smith is entitled to credit for having spent 23 years six months in prison and 17 months in jail prior to prison, and he also earned 94 months of postconviction credit. Smith's total credits exceed his base term of imprisonment by 12 years nine months, which is another way of stating, as we have already done, that his sentence was 20 years but he constructively served 32 years nine months.
With the foregoing arithmetic in mind, we turn to the question that frames the parties' disagreement, namely the legal effect on Smith's five-year parole of the 12 years nine months by which his constructive service exceeded his prison sentence. The People argue that parole is a separate penal servitude that Smith must satisfy apart from and notwithstanding any excess in his credits over his sentence. Smith argues that the 12-year-nine-month excess must be applied against his five-year parole term, reducing his required time on parole to zero. We agree with Smith. *Page 457 
Although the parties have not called our attention to any statute that directly addresses Smith's situation, in another context, statutory law provides for the foregoing result. Penal Code section 1170, subdivision (a)(3), specifies in the case of a prisoner serving a determinate term, "[t]he court shall advise the defendant that he or she shall serve a period of parole and order the defendant to report to the parole office closest to the defendant's last legal residence, unless the in-custodycredits equal the total sentence, including both confinementtime and the period of parole." (Italics added.)
Moreover, the California Code of Regulations provides that when prisoners have served time beyond their sentences, the excess is to be applied against their parole periods, if any. This rule is set forth in title 15, section 2345, of the California Code of Regulations, which provides: "If any custody credit remains after deducting it from the offense to which it applies, the remaining credit shall be deducted from the parole period."(4) The regulations define "custody credit" (ibid.) as including credit under Penal Code section2900.5. (Cal. Code Regs., tit. 15, § 2341, subd. (a)(1).) Section 2900.5, in turn, defines being in custody as being lodged in any one of numerous places of detention. (Id., subd. (a).) Plainly, Smith falls within the purview of section 2345 of title 15 of the California Code of Regulations.
The foregoing regulations, read together, do not define credits for good conduct or behavior as "custody credit." But Smith's entitlement to have his sentence reduced for good conduct is implicitly covered by another regulation. "DSL [Uniform Determinate Sentence Act of 1976] prisoners and ISL [Indeterminate Sentence Law] prisoners who have DSL release dates retroactively calculated are entitled to credit for good behavior and participation, and may earn work time credit. Good time and work time credit shall be deducted from the DSL release date." (Cal. Code Regs., tit. 15, § 2120.)[2] *Page 458 
Decisional law also favors Smith. In In re Ballard
(1981) 115 Cal.App.3d 647 [171 Cal.Rptr. 459], the parole board proposed "deducting from [Ballard's] parole term the excess of the time [he] actually spent in prison beyond the time he should have spent had all credits . . . been timely applied." (Id. at p. 649.) The parole board in Ballard
made this suggestion after acknowledging the rule on which Smith now relies, i.e., "the amount of time petitioner spent incarcerated, in excess of the period he would have spent had all custody and conduct credits . . . to which he was entitled been applied, should be deducted from his parole term." (Id. at pp. 648-649.) The Ballard court agreed. (See also In re Randolph (1989)215 Cal.App.3d 790, 795 [263 Cal.Rptr. 768]; In re Reina (1985)171 Cal.App.3d 638, 642 [217 Cal.Rptr. 535]; In re Anderson
(1982) 136 Cal.App.3d 472, 476 [186 Cal.Rptr. 269] (percuriam).)
The People advance countervailing arguments. They stress that Penal Code section 3000, which sets forth a number of rules regarding the length of parole periods, provides no provision for credits against the parole period (but see id., § 1170, subd. (a)(3), as quoted in this discussion). The People also rely on Penal Code section 3000's finding regarding the benefits of parole following imprisonment: "The Legislature finds and declares that the period immediately following incarceration is critical to successful reintegration of the offender into society and to positive citizenship. It is in the interest of public safety for the state to provide for the supervision of and surveillance of parolees, including the judicious use of revocation actions, and to provide educational, vocational, family and personal counseling necessary to assist parolees in the transition between imprisonment and discharge. A sentence pursuant to [Penal Code s]ection 1168 or 1170 shall include a period of parole, unless waived, as provided in this section." (Id., subd. (a)(1).) This general language, however, must give way to more specific statutes, under the rule that specific statutes prevail over and control more general ones. (Lake v. Reed (1997) 16 Cal.4th 448, 464
[65 Cal.Rptr.2d 860, 940 P.2d 311].) Certainly Penal Code section1170, subdivision (a)(3), would prevail over Penal Code section3000, and we find it hard to believe that the Legislature would favor one rule for prisoners whose determinate terms were set by the sentencing court and another for prisoners whose determinate terms were eventually set by the parole board. We cannot say that Penal Code section 3000's broad statements of legislative findings should operate to defeat Smith's right to relief under decisional law and the applicable regulation. (6)
Moreover, the gravamen of subdivision (a)(1) of section 3000 is the requirement that a "sentence pursuant to [Penal Code s]ection 1168 or 1170 shall include a period of parole, unless waived, as provided in this *Page 459 
section." The parties do not dispute that Smith was subject to five years of parole (although Smith at one time insisted that his parole period should be three years, not five, he waives the issue on appeal, voluntarily doing so because the 12 years nine months of sentencing credits he has beyond his base term of imprisonment makes the question irrelevant).
The People also rely on a statement in People v.Jefferson (1999) 21 Cal.4th 86 [86 Cal.Rptr.2d 893,980 P.2d 441], in which the Supreme Court, relying on a law review article published in 1978, remarked that "under the present law the prison `term' is the actual time served in prison before release on parole, and the day of release on parole marks the end of the prison term. Unlike the pre-1977 sentencing law, the period of parole is not part of a defendant's prison term. . . ." (Id. at p. 95, original italics omitted.) The People argue in essence that the language of Jefferson
instructs that Smith should serve his five-year parole term no matter what other decisions or the California Code of Regulations may say.
People v. Jefferson, supra, 21 Cal.4th 86, does not, however, defeat defendant's entitlement to relief.Jefferson must be understood in the context of the question presented there, namely how to "interpret the phrase `minimum term for an indeterminate term,' as it is used in [Penal Code] section 667[, subdivision] (e)(1). This phrase is not defined in the Three Strikes law or elsewhere in the Penal Code. To ascertain its meaning, we examine the manner in which the length of an inmate's term is calculated under both the Determinate Sentencing Act and the indeterminate sentencing scheme that preceded it." (Id. at p. 94.) This case does not present the question of how to calculate Smith's base term of imprisonment: the parole board set it at 20 years. We find no language in Jefferson to support the People's position. Jefferson concluded: "Because [Penal Code] section 3046 requires that a defendant sentenced to life imprisonment with the possibility of parole serve `at least seven calendar years or . . . a term as established pursuant to any other section of law that establishes a [greater] minimum period of confinement' before becoming eligible for parole, it sets forth a `minimum term' within the meaning of [Penal Code] section 667 [, subdivision] (e)(1), which provides that for a defendant with a prior strike the `minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony provision.'" (Id. at p. 96.) It is a truism of the law that cases are not authority for propositions not considered. (People v. Avila
(2006) 38 Cal.4th 491, 567 [43 Cal.Rptr.3d 1, 133 P.3d 1076].)Jefferson did not consider anything remotely related to the posture of this case, and does not weigh in our assessment of it. *Page 460 
 DISPOSITION
The order of the superior court is affirmed.
Mihara, Acting P. J., and McAdams, J., concurred.
[1] The Board of Prison Terms was abolished effective July 1, 2005, and replaced by the Board of Parole Hearings. (Pen. Code, § 5075, subd. (a).)
[2] We say implicitly because the regulation does not precisely extend to prisoners in Smith's situation. The regulations define an "ISL prisoner" as follows: "A person sentenced to prison for a crime committed on or before June 30, 1977, who would have been sentenced pursuant to Penal Code section 1170 if he had committed the crime on or after July 1, 1977." (Cal. Code Regs., tit. 15, § 2000, subd. (b)(1); see also id., subd. (b)(59).) Prisoners in Smith's situation are defined in a separate category as "life prisoners" (id., subd. (b)(3)(B)), and section 2120 does not speak of life prisoners. But we understand section 2120 to refer to prisoners generally who were serving an indeterminate sentence until the parole board fixed their base terms of imprisonment. Were it otherwise, the following rule would be in conflict with the other applicable regulations: "The amount of good conduct credit that a prisoner sentenced for first or second degree murder may earn to reduce the minimum eligible parole date is established by statute. ([Pen. Code, §] 2930 et seq.)" (Cal. Code Regs., tit. 15, § 2400, 2d par.) *Page 461