Filed 5/16/13

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LANDSTAR GLOBAL LOGISTICS, INC., | D060829 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2010-00094559-CU-EN-CTL) |
| ROBINSON & ROBINSON, INC., | |
| Defendant; | |
| WELLS FARGO BANK, N.A., et al., | |
| Interveners and Appellants. | |

APPEAL from orders of the Superior Court of San Diego County, Michael S. Groch, Judge. Reversed.

Pillsbury Winthrop Shaw Pittman, Kevin Fong, William B. Freeman and Matthew S. Walker for Intervener and Appellant Wells Fargo Bank, N.A.

Loeb & Loeb, Lance N. Jurich and Benjamin Valerio, for Intervener and Appellant David P. Stapleton, court-appointed receiver for Robinson & Robinson, Inc.

No appearance for Plaintiff and Respondent.

In this appeal from postjudgment orders directing issuance of a letter rogatory requesting registration of judgment liens against properties of the judgment debtor in Mexico and restraining the debtor from transferring its right to payment upon the sale of those properties, we must decide two issues of first impression in California. First, may a court request the registration of judgment liens in a foreign country via a letter rogatory issued pursuant to the Inter-American Convention on Letters Rogatory? Second, may a court issue an order restraining the disposition of a right to payment pursuant to Code of Civil Procedure section 708.520 when it has not previously or simultaneously issued an order assigning the right to payment pursuant to section 708.510 of that code?[1] We answer both questions in the negative and therefore reverse the challenged orders.

I.

BACKGROUND

A.    *The Litigation Against Robinson & Robinson, Inc.*

There are three lawsuits pertinent to the issues involved in this appeal:

First, Landstar Global Logistics, Inc. (Landstar) filed an action in the San Diego County Superior Court to domesticate and enforce a judgment it had obtained against Robinson & Robinson, Inc. (Robinson) in Florida. The trial court (Hon. Michael S. Groch) entered a judgment and issued a writ of execution. The postjudgment orders challenged on appeal were issued in this action.

---

[1]    Further undesignated section references are to the Code of Civil Procedure.

Second, in a separate and subsequent action filed in the San Diego County Superior Court, Wells Fargo Bank, N.A. (Wells Fargo) sued Robinson and several affiliates after they had defaulted on secured loans and ceased business operations. At Wells Fargo's request, the trial court (Hon. William S. Cannon) appointed David P. Stapleton to act as receiver for Robinson and its affiliates.

Third, Wells Fargo also filed an action in Mexico against Robinson and some of its Mexican affiliates. The Mexican court granted Wells Fargo judicial liens on real property owned by a trust of which Robinson was a beneficiary. The parties to the Mexican litigation later entered into a settlement agreement under which Robinson agreed to sell its Mexican realty; to pay the proceeds to Wells Fargo; and, after a certain time period, to transfer to Wells Fargo title to any properties that remained unsold.

B.      *Landstar's Motion for Issuance of a Letter Rogatory and a Restraining Order*

In its action against Robinson, Landstar moved the trial court for three orders as part of its efforts to enforce the judgment. Landstar requested: (1) *an order issuing a letter rogatory* requesting that the Mexican authorities register the judgment liens issued by the trial court; (2) *an assignment order* transferring to Landstar Robinson's rights to receive proceeds from the sale of Mexican real property held in trust for Robinson; and (3) *a restraining order* prohibiting Robinson from transferring those rights to anyone else.

Landstar sought issuance of the letter rogatory pursuant to the Inter-American Convention on Letters Rogatory (Inter-American Convention on Letters Rogatory

3

(Apr. 15, 1980) 28 U.S.C.A. (2006) foll. § 1781, pp. 594-598 (hereafter, Convention)),[2] to which the United States and Mexico are signatories (*Laino v. Cuprum S.A. de C.V.* (N.Y.App.Div. 1997) 235 A.D.2d 25, 28 [663 N.Y.S.2d 275, 276]).  Landstar asserted a letter rogatory was appropriate because the trial court had entered a judgment against Robinson, and Landstar was "seeking to collect on that judgment."  Specifically, Landstar sought to have judgment liens registered in Mexico in order to perfect security interests in Robinson's right to receive the proceeds of the sale of real property located in Mexico and held in trust for Robinson.

Landstar sought the assignment and restraining orders pursuant to provisions of California's statutory scheme for enforcing judgments.  (See §§ 708.510, 708.520.) Landstar claimed it was entitled to these orders because Robinson had the right to receive proceeds from the sale of certain real property located in Mexico, that right should be assigned to Landstar up to the amount of the judgment, and Robinson should be prohibited from disposing of that right.

Wells Fargo and Stapleton intervened in Landstar's action against Robinson to oppose the motion.  They argued:  (1) the Convention does not authorize issuance of a letter rogatory to enforce a domestic judgment in a foreign country; (2) Landstar had no right to the requested assignment and restraining orders; and (3) Landstar's motion

---

[2]    Because the Convention is printed in full in federal statutory compilations, we deny as unnecessary the request of Wells Fargo and Stapleton that we take judicial notice of the Convention.  (See *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 45, fn. 9 ["A request for judicial notice of published materials is unnecessary. Citation to the materials is sufficient."].)

4

impermissibly interfered with the receivership, Wells Fargo's Mexican lawsuit, and its first-priority security interests.

In its reply papers, Landstar argued the request for a letter rogatory was a procedurally proper attempt to provide notice that it claimed a right to property that may be owned by Robinson. It withdrew its request for an assignment order. Nevertheless, Landstar contended its "ancillary" request for a restraining order was proper because it simply sought "to maintain the status quo" by ensuring that whatever property rights Robinson possessed were not transferred to avoid Landstar's judgment.

The trial court granted Landstar's motion insofar as it requested issuance of a letter rogatory and a restraining order. The letter rogatory requested that the appropriate judicial authority in Mexico order the registration of judgment liens on real and personal property owned by Robinson, including Robinson's rights as the beneficiary of a trust holding title to real property located in Mexico. The court also issued an order restraining Robinson from assigning or otherwise disposing of its rights concerning the Mexican property held in trust for its benefit. At the request of Wells Fargo and Stapleton, the court stayed issuance of the letter rogatory pending this appeal, but refused to stay the restraining order.

## II.

## DISCUSSION

Wells Fargo and Stapleton argue the trial court erroneously issued the letter rogatory and the restraining order. Specifically, they contend the Convention does not authorize issuance of a letter rogatory designed to enforce a judgment, and

5

section 708.520 does not authorize issuance of a restraining order in the absence of a corresponding assignment order issued under section 708.510. We agree with both contentions for the reasons set forth below.

A.    *The Trial Court Erred by Issuing the Letter Rogatory*

We first consider whether the trial court erroneously issued the letter rogatory that Landstar requested. A letter rogatory is a document from one court to a foreign court requesting the foreign court's assistance in performing a judicial act. (22 C.F.R. § 92.54 (2013); *Lantheus Medical Imaging, Inc. v. Zurich American Ins. Co.* (S.D.N.Y. 2012) 841 F.Supp.2d 769, 775.) Here, Landstar moved for an order issuing a letter rogatory pursuant to the Convention on the ground that the registration of the judgment liens it was requesting was a procedural act of a merely formal nature expressly authorized by article 2(a) of the Convention. For reasons we shall explain, we disagree.

Our determination whether the letter rogatory requested by Landstar and issued by the trial court was authorized by the Convention "begins with its text" (*Medellín v. Texas* (2008) 552 U.S. 491, 506), which is "the ultimately dispositive source of judicial decisionmaking" (*Mitsubishi Materials Corp. v. Superior Court* (2003) 113 Cal.App.4th 55, 69). Section II of the Convention defines its scope and consists of two articles. Article 2 states in pertinent part:

> "This Convention shall apply to letters rogatory, issued in conjunction with proceedings in civil and commercial matters held before the appropriate judicial or other adjudicatory authority of one of the States Parties to this Convention, that have as their purpose:

6

"a. The performance of procedural acts of a merely formal nature, such as service of process, summonses or subpoenas abroad . . . ." (Convention, 28 U.S.C.A., *supra*, foll. § 1781, p. 595.)

Article 3 states: "This Convention shall not apply to letters rogatory relating to procedural acts other than those specified in the preceding article; and in particular it shall not apply to acts involving measures of compulsion." (*Ibid.*) Thus, we must determine whether the letter rogatory that Landstar sought was, as it convinced the trial court, an authorized request for performance of "procedural acts of a merely formal nature" (*ibid.*); or whether the letter was, as Wells Fargo and Stapleton argued in the trial court and argue again on appeal, an unauthorized request for performance of "acts involving measures of compulsion" (*ibid.*).

The Convention does not define the phrase "procedural acts of a merely formal nature" or the phrase "acts involving measures of compulsion." (Convention, 28 U.S.C.A., *supra*, foll. § 1781, p. 595.) We therefore apply general rules of construction applicable to treaties to determine their meaning. The terms of a treaty "must be fairly construed." (*Valentine v. United States ex rel. Neidecker* (1936) 299 U.S. 5, 11.) "The clear import of treaty language controls unless 'application of the words of the treaty according to their obvious meaning effects a result inconsistent with the intent or expectations of its signatories.'" (*Sumitomo Shoji America, Inc. v. Avagliano* (1982) 457 U.S. 176, 180; accord, *Air China Limited v. County of San Mateo* (2009) 174 Cal.App.4th 14, 20.) In particular, where, as here, the terms of a treaty are not defined, the ordinary or most natural meaning of the terms controls unless a restricted sense was clearly intended or an absurdity would result. (*Chan v. Korean Air Lines, Ltd.* (1989) 490 U.S. 122, 134

7

& fn. 5; *In re B. del C.S.B.* (9th Cir. 2009) 559 F.3d 999, 1010; *Kreimerman v. Casa Veerkamp, S.A. de C.V.* (5th Cir. 1994) 22 F.3d 634, 638 (*Kreimerman*); *Tashiro v. Jordan* (1927) 201 Cal. 236, 246.)  Also, "[o]ther general rules of construction may be brought to bear on difficult or ambiguous passages."  (*Volkswagenwerk Aktiengesellschaft v. Schlunk* (1988) 486 U.S. 694, 700; see also *Estate of Ghio* (1910) 157 Cal. 552, 561 ["treaties are subject to the same rules of interpretation as other documents"].)

With these interpretive rules in mind, we first consider the phrase "procedural acts of a merely formal nature" contained in article 2(a) of the Convention.  In this context, the most natural meaning of "procedural acts" is steps taken according to rules that prescribe the manner of conducting litigation or other judicial business, as opposed to rules that define parties' substantive rights and obligations.  (See Webster's 3d New Internat. Dict. (2002) p. 1807, col. 3 [defining "procedure"]; Black's Law Dict. (9th ed. 2009) p. 1323, col. 2 [defining "procedural law"].)  In this context, the most natural meaning of "formal" is "adhering to accepted forms, conventions, or regulations" (American Heritage Dict. (2d coll. ed. 1985) p. 526, col. 1), such as the "special or stipulated solemnities or formalities" required for an act "to become effective" (Webster's, p. 893, col. 2).  Thus, the plain meaning of the phrase "procedural acts of a merely formal nature," as used in article 2(a) of the Convention, is customary or conventional steps that are taken to provide a person with legally sufficient notice of a proceeding or of a document filed or issued in a proceeding, but that do not alter the person's substantive rights or obligations.

8

Moreover, in construing the general phrase "procedural acts of a merely formal nature," we must also consider the specific terms "service of process, summonses or subpoenas" to which the general phrase is joined by "such as." (Convention, 28 U.S.C.A., *supra*, foll. § 1781, p. 595.) The words of a treaty must be read in context (*Air France v. Saks* (1985) 470 U.S. 392, 397; *Kreimerman*, *supra*, 22 F.3d at p. 638); and "'a word is given more precise content by the neighboring words with which it is associated'" (*Freeman v. Quicken Loans, Inc.* (2012) ___ U.S. ___, ___ [182 L.Ed.2d 955, 958; 132 S.Ct. 2034, 2042]; see also *Rossa v. D.L. Falk Construction, Inc.* (2012) 53 Cal.4th 387, 397 [item in list should be interpreted with reference to other items in list so as to make all items similar in nature and scope]; *Coors Brewing Co. v. Stroh* (2001) 86 Cal.App.4th 768, 778 [meaning of listed statutory term may be determined by reference to characteristics it shares with other terms in list]). The specific items listed in article 2(a) of the Convention — service of process, summonses, and subpoenas — are examples of legal processes or documents designed to provide notice of a legal proceeding or of a document involved therein. Additional examples of items considered to be procedural acts within the meaning of article 2(a) of the Convention are listed in its associated protocol, which prescribes rules for the preparation, transmission, and processing of letters rogatory. (Additional Protocol to the Inter-American Convention on Letters Rogatory, 28 U.S.C.A., *supra*, foll. § 1781, pp. 598-605 (hereafter, Additional Protocol).) Article 1 of the Additional Protocol states that "such acts shall be understood to mean procedural acts (pleadings, motions, orders, and subpoenas) that are served and requests for information that are made" by one court to another. (*Id.*, p. 598.) These

additional examples also concern the provision of notice of documents involved in legal proceedings. The specific examples of procedural acts listed in the Convention and the Additional Protocol therefore support our plain-meaning interpretation of the phrase "procedural acts of a merely formal nature."

We next consider the meaning of the phrase "acts involving measures of compulsion" contained in article 3 of the Convention. The ordinary meaning of "compulsion" is "an act of compelling **:** a driving by force, power, pressure, or necessity." (Webster's 3d New Internat. Dict., *supra*, p. 468, col. 1; accord, Black's Law Dict., *supra*, p. 326, col. 2.) To "compel," in turn, means "[t]o cause or bring about by force, threats, or overwhelming pressure." (Black's, p. 321, col. 1.) A synonym of "compel" is "enforce." (Webster's, p. 751, col. 2; see also Black's, p. 608, col. 2 [defining "enforce" as "to compel obedience to"].) We thus construe the phrase "acts involving measures of compulsion" as used in article 3 of the Convention to mean steps that are taken to make a proceeding effective or to enforce compliance with or to compel obedience to a document entered or issued in a proceeding, and that alter a party's substantive rights or obligations.

Having construed the relevant phrases of the Convention, we must now determine whether the letter rogatory requested by Landstar and issued by the trial court sought performance of authorized "procedural acts of a merely formal nature" or unauthorized "acts involving measures of compulsion." (Convention, 28 U.S.C.A., *supra*, foll. § 1781, p. 595.) In its motion, Landstar stated it was "seeking to collect on [the] judgment" against Robinson, and registration of judgment liens against Robinson's property in Mexico would "preserve Landstar's rights in that property." In a supporting declaration,

10

Landstar's counsel asserted that Landstar had retained a Mexican law firm "in order to assist in attempts to enforce its judgment," and that he was "working with Landstar's Mexico counsel in taking appropriate action to collect on Landstar's judgment." An attorney with the retained firm stated in a declaration that as "part of the collection efforts," he intended to register judgment liens in Mexico. At the hearing on the motion, Landstar's counsel said: "Is that notice in furtherance of our trying to collect on judgment? You bet. Obviously. Absolutely. Right. . . . We're trying to collect a judgment." Finally, in the letter rogatory, the trial court requested the appropriate judicial authority in Mexico to order registration of judgment liens against Robinson's property. On this record, it is clear that Landstar requested and the trial court issued the letter rogatory as part of Landstar's efforts to enforce its judgment against Robinson.[3]

---

3      Recording a judgment lien against a judgment debtor's property is a well-established method of enforcing a money judgment in California and other states. (See, e.g., §§ 697.310, 697.510 [enforcement of judgments law authorizes recordation of judgment liens on real and personal property]; *Wells Fargo Financial Leasing, Inc. v. D & M Cabinets* (2009) 177 Cal.App.4th 59, 69 [recording judgment lien is one step in process of sale of property to enforce judgment]; *Mark Briggs & Associates, Inc. v. Kinestar, Inc.* (1983) 143 Cal.App.3d 483, 486 [purpose of judgment lien is to give judgment creditor immediate security for subsequent enforcement of judgment]; *Struzinski v. Struzinsky* (1947) 133 Conn. 424, 429 [52 A.2d 2, 5] [purpose of judgment lien statute "was 'to provide an additional method of appropriating in satisfaction of [the] judgment real estate which could by law be taken on . . . execution'"]; *Maniez v. Citibank, F.S.B.* (2008) 383 Ill.App.3d 38, 41 [890 N.E.2d 662, 665] [judgment lien " 'affords a means of collecting a judgment by forcing the sale of the judgment debtor's property . . . to the extent necessary to satisfy the debt and costs'"]; *Chambers v. Cardinal* (2007) 177 Md.App. 418, 436 [935 A.2d 502, 513] [" 'a judgment lien is a general lien on real property of the debtor and signifies only the right of the judgment creditor to order the sale of the debtor's property to satisfy his judgment'"].) According to the Mexican lawyer retained by Landstar, recording a judgment lien in Mexico would have "the same and/or similar legal effects."

11

Use of a letter rogatory for enforcement purposes is not authorized by the Convention, however. Efforts to enforce a judgment do not require performance of "procedural acts of a merely formal nature" — the only type of acts authorized by the Convention (28 U.S.C.A., *supra*, foll. § 1781, p. 595) — because such efforts do not seek simply to provide the judgment debtor with legally sufficient notice of the judgment. Rather, efforts to enforce a judgment seek to alter the judgment debtor's substantive rights by depriving it of money or other property sufficient to satisfy the judgment. Hence, efforts to enforce a judgment require performance of "acts involving measures of compulsion," to which the Convention explicitly "shall not apply." (*Ibid.*)

Our conclusion that the Convention does not authorize issuance of a letter rogatory designed to enforce a judgment is consistent with the Department of State's interpretation of the Convention. "While courts interpret treaties for themselves, the meaning given them by the departments of government particularly charged with their negotiation and enforcement is given great weight." (*Kolovrat v. Oregon* (1961) 366 U.S. 187, 194 (*Kolovrat*); see also *Abbott v. Abbott* (2010) ___ U.S. ___, ___ [176 L.Ed.2d 789, 805, 130 S.Ct. 1983, 1993] ["It is well settled the Executive Branch's interpretation of a treaty 'is entitled to great weight.'"]; *Denlinger v. Chinadotcom Corp.* (2003) 110 Cal.App.4th 1396, 1403 [same].) In a letter to President Reagan recommending transmittal of the Convention and the Additional Protocol to the Senate for ratification (which letter President Reagan subsequently transmitted to the Senate along with the Convention and the Additional Protocol), the Department of State advised the President that "[t]he Convention, together with the Additional Protocol, establishes a mechanism for the

12

service of process and similar documents and for processing certain requests for information which should . . . save American courts and litigants significant time, effort and expense."[4] More specifically, the Department of State wrote: "*Article 2* limits the scope of the Convention to the performance of procedural acts, such as service of process, summonses or subpoenas . . . . [¶] . . . [¶] *Article 3* expressly excludes compulsory enforcement measures such as attachments, garnishments, restraining orders and other enforcement-oriented measures from the purview of the Convention."[5]

The registration of a judgment lien does not involve either the service of documents or the processing of a request for information, the purposes for which the Convention was established. Further, the registration of a judgment lien is not among, and bears little resemblance to, the specific procedural acts mentioned by the Department of State as coming within the scope of the Convention. By contrast, the registration of a judgment lien does resemble the specific measures the Department of State mentioned as being expressly excluded from the scope of the Convention, in that all of those measures are remedies available to creditors seeking to compel payment by debtors. (See §§ 483.010, 484.010 [creditor on contract claim for money may apply for writ of

---

[4]     We grant the request of Wells Fargo and Stapleton to take judicial notice of the letter from the Department of State to President Reagan. Such official acts of the executive department of the United States are properly subject to judicial notice. (Evid. Code, § 452, subd. (c); *Estate of Eng* (1964) 228 Cal.App.2d 160, 164.)

[5]     The Department of State also noted parenthetically that the Additional Protocol "expands the list of examples of such procedural acts to include 'pleadings, motions, orders, and subpoenas'; it also provides that letters rogatory may be used to direct requests for information to a judicial or administrative authority, e.g., on the status of a ruling or case."

13

attachment against debtor's property], 697.310 [judgment creditor may record judgment lien on judgment debtor's real property], 697.510 [judgment creditor may record judgment lien on judgment debtor's personal property], 706.102 [judgment creditor may apply for order garnishing judgment debtor's wages], 708.520 [judgment creditor may apply for order restraining judgment debtor from transferring right to payment].)  Thus, under the Department of State's interpretation of the Convention, to which we give "great weight" (*Kolovrat*, *supra*, 366 U.S. at p. 194), the letter rogatory issued by the trial court requesting registration of judgment liens against Robinson's Mexican property involves an enforcement-oriented measure expressly excluded from the scope of the Convention.

Finally, we note that several federal district courts have held that a letter rogatory issued pursuant to the Convention was not a proper procedural device for enforcing a judgment.  (See, e.g., *Osario v. Harza Engineering Co.* (N.D.Ill. 1995) 890 F.Supp. 750, 753 ["a letter rogatory is an incorrect vehicle to enforce a foreign judgment"]; *Tacul, S.A. v. Hartford Nat. Bank & Trust Co.* (D.Conn. 1988) 693 F.Supp. 1399, 1400 ["there is no authority for the issuance of a writ of execution to enforce a foreign judgment through the use of letters rogatory"]; *In re Civil Rogatory Letters* (S.D.Tex. 1986) 640 F.Supp. 243, 243 [enforcing foreign judgment "is beyond the scope of assistance which a United States District Court may give pursuant to a request for judicial assistance by letters rogatory"].)  Although the decisions of lower federal courts are not binding on us, we consider them persuasive where, as here, they decide a question of federal law (here, the interpretation of a treaty) in a uniform way.  (*Etcheverry v. Tri-Ag Service, Inc.* (2000) 22 Cal.4th 316,

320-321; *Spellman v. Securities, Annuities & Ins. Services, Inc.* (1992) 8 Cal.App.4th 452, 459; *In re Hogan* (1986) 187 Cal.App.3d 819, 825.)

In sum, we hold that the Convention does not authorize the issuance of a letter rogatory that has as its purpose the enforcement of a money judgment. Accordingly, the trial court erred by issuing the letter rogatory that Landstar requested.

B.       *The Trial Court Erred by Issuing the Restraining Order*

We next consider whether the trial court erroneously issued the restraining order that Landstar sought pursuant to section 708.520. As pertinent to this appeal, that statute provides: "*When an application is made pursuant to Section 708.510 or thereafter*, the judgment creditor may apply to the court for an order restraining the judgment debtor from assigning or otherwise disposing of the right to payment that is sought to be assigned." (§ 708.520, subd. (a), italics added.) Section 708.510 authorizes a court, upon the motion of a judgment creditor, to order a judgment debtor to assign a right to payment to the judgment creditor. Thus, section 708.520 requires a judgment creditor who applies for a restraining order to do so either at the same time as it applies for an assignment order under section 708.510 or at any time after it has done so.

Landstar did not satisfy this express statutory requirement for issuance of a restraining order. Although in its initial moving papers Landstar requested both an assignment order and a restraining order under sections 708.510 and 708.520, in its reply papers it withdrew the request for an assignment order. Statutory provisions governing these remedies are subject to strict construction, however, because the remedies are purely legislative creations; and to obtain them, a judgment creditor must comply with all

15

applicable procedural and other statutory requirements.  (*Casa Eva I Homeowners Assn. v. Ani Construction & Tile, Inc.* (2005) 134 Cal.App.4th 771, 778-779; *Epstein v. Abrams* (1997) 57 Cal.App.4th 1159, 1167; *Viotti v. Giomi* (1964) 230 Cal.App.2d 730, 737; see also *Jordan-Lyon Productions, Ltd. v. Cineplex Odeon Corp.* (1994) 29 Cal.App.4th 1459, 1466 [same rule as to attachment statutes].)  Therefore, since Landstar did not comply with the requirement that it apply for an assignment order either before or at the same time as it applied for a restraining order (§ 708.520, subd. (a)), the trial court erred by issuing the restraining order.  (Cf. *Casa Eva I Homeowners Assn.*, at pp. 779-780 [affirming denial of motion for order for satisfaction of judgment lien because lien notice did not contain warnings mandated by statute]; *Epstein*, at p. 1167 [reversing order approving settlement under judgment lien statutes when creditor had contractual lien, not judgment lien].)

## DISPOSITION

The order directing issuance of a letter rogatory and the restraining order are reversed.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

HUFFMAN, J.

16