Filed 5/14/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re DAMIEN COLEMAN<br><br>     on Habeas Corpus. | A142734<br><br>(Marin County<br>Super. Ct. No. SC188320A) |

     When a state prison inmate commits a felony, Penal Code, section 1170.1, subdivision (c) ("Section 1170.1(c)"),[1] provides that any consecutive sentence for such felony "shall commence from the time the person would otherwise have been released from prison." This case requires that we interpret Section 1170.1(c) to determine whether an inmate serving a life term who commits a custodial offense is entitled to have his consecutive sentence for that offense begin on the date he completes his base term or on the date he is found suitable for parole. The trial court adopted the former interpretation, granted the petition for habeas corpus filed by Damien Coleman (petitioner), and ordered that petitioner be released from prison on the ground that the California Department of Corrections and Rehabilitation (CDCR) miscalculated his release date. Kevin Chappell (appellant), Warden at San Quentin State Prison, appeals from the superior court's order and contends the superior court erred in its construction of Section 1170.1(c). Appellant argues the term for the custodial offense did not commence until the Board of Parole Hearings' (Board) determination that petitioner was suitable for parole became effective in 2013. Because the superior court's order is contrary to the plain language of Section 1170.1(c), we reverse.

---

[1] All further undesignated statutory references are to the Penal Code.

1

BACKGROUND

Petitioner pled guilty to second degree murder (§ 187) in April 1990 and in September received an indeterminate sentence of 15 years to life in prison; he began serving his sentence on October 4, 1990.

In March 2000, while serving his indeterminate life term, petitioner was convicted of conspiring to bring a controlled substance into prison (§§ 182, subd. (a)(1), 4573). He received a six-year determinate term to be served consecutive to his indeterminate term.

On October 4, 2012, after petitioner had served 22 years in prison, the Board found him suitable for parole.[2] The Board calculated the base term of confinement for the 1990 conviction to be 18 years. (See § 3041.) The parole grant became effective on March 3, 2013 after the Governor took no action to reverse it.[3] The CDCR calculated petitioner's earliest possible prison release date to be December 21, 2017. In its calculation, the CDCR started from March 3, 2013, added the six-year term imposed for the custodial offense, and subtracted projected credits.

In March 2014, petitioner filed a petition for writ of habeas corpus. He contended that, in calculating his release date, the consecutive sentence imposed on his custodial offense should have commenced on the date he completed the 18 year base term on the 1990 murder conviction.

On July 25, 2014, the superior court granted the petition for writ of habeas corpus and directed that petitioner be released from prison. Appellant requested stay of the release order and appealed.

---

[2] The Board's decision characterizes its finding as petitioner is "eligible for parole." However, the Board's more specific finding that petitioner "does not pose an unreasonable risk of danger or threat to public safety if he is released from prison at this time" is more properly characterized as a finding that petitioner is "suitable for release on parole." (Cal. Code Regs., tit. 15, § 2402, subd. (a); see § 3041, subd. (a); *In re Dannenberg* (2004) 34 Cal.4th 1061, 1080 (*Dannenberg*)).

[3] "A decision of the Board finding an inmate suitable for parole becomes final as to the Board within 120 days of the date of the hearing. (§ 3041, subd. (b).) The Governor then has 30 days within which to review the Board's decision. (§ 3041.2, subd. (a).)" (*In re Lira* (2014) 58 Cal.4th 573, 578, fn. 3 (*Lira*).)

On August 25, 2014, this court granted appellant's petition for writ of supersedeas, staying the superior court's July 2014 order pending resolution of the present appeal.

DISCUSSION

Section 1170.1(c), which relates to sentencing for felonies committed by prisoners, provides in relevant part, "In the case of any person convicted of one or more felonies committed while the person is confined in the state prison . . . and the law either requires the terms to be served consecutively or the court imposes consecutive terms, the term of imprisonment for all the convictions that the person is required to serve consecutively *shall commence from the time the person would otherwise have been released from prison*."[4]  (Emphasis added.)  Appellant contends the superior court erred in concluding the term of imprisonment for petitioner's year 2000 custodial offense commenced from the date of completion of the 18-year base term for the 1990 murder conviction, rather than from the date the grant of parole was effective in March 2013. We agree.

"Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose.  We first examine the statutory language, giving it a plain and commonsense meaning.  We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.  If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.  If the statutory language permits more than one reasonable interpretation, courts may consider

---

[4] Section 1170.1(c) provides in full: "In the case of any person convicted of one or more felonies committed while the person is confined in the state prison or is subject to reimprisonment for escape from custody and the law either requires the terms to be served consecutively or the court imposes consecutive terms, the term of imprisonment for all the convictions that the person is required to serve consecutively shall commence from the time the person would otherwise have been released from prison.  If the new offenses are consecutive with each other, the principal and subordinate terms shall be calculated as provided in subdivision (a).  This subdivision shall be applicable in cases of convictions of more than one offense in the same or different proceedings."

other aids, such as the statute's purpose, legislative history, and public policy."
(*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733,
737; accord *Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724.)  Our
review of a question of statutory interpretation is de novo.  (*Wiener v. Southcoast
Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.)

"The determinate sentencing law treats in-prison offenses differently than out-of-
prison offenses.  [Citation.]  The difference is simple and understandable.  The
Legislature wanted in-prison crimes to be punished more severely than crimes committed
'on the outside.'  [Citation.]  Thus, as a general rule sentences for out-of-prison offenses
are calculated under subdivision (a) of section 1170.1—the greatest term of imprisonment
is the principal term and the consecutive sentences are subordinate terms, served at one-
third of the middle term."  (*People v. White* (1988) 202 Cal.App.3d 862, 869 (*White*).)  In
contrast, "Section 1170.1(c) applies to felonies committed when the defendant is
confined in a state prison.  The statutory scheme makes clear that such felonies, i.e., those
felonies committed in prison, are exempt from the general sentencing scheme.  [Citation.]
A sentence under subdivision (c) is longer than a sentence imposed under subdivision (a)
because the in-prison offenses are fully consecutive to the sentence for the offense for
which the defendant was in prison.  Using sentencing jargon 'the in-prison offense is
treated as a new principal term rather than as a subordinate term to the out-of-prison
offense.' "  (*White*, at pp. 869–870.)

The issue in the present case is *when* the fully consecutive sentence for petitioner's
custodial offense *commences* under Section 1170.1(c).  Appellant argues the statute is
unambiguous: Under the plain language of the statute, the date petitioner would have
been released from prison had he not committed the custodial offense was the date the
Board's parole suitability decision became effective.  The superior court, however,
concluded the consecutive sentence for the custodial offense commenced in 2008, when
petitioner completed serving the 18-year base term designated by the Board in 2012, at
the time of the suitability determination.  This court explained the role of the base term in
*In re Bush* (2008) 161 Cal.App.4th 133, 141–142 (*Bush*): "When a life prisoner is found

4

suitable for parole, the Board sets a release date by calculating a 'base term' for the offense, adjusted by any credits to which the prisoner is entitled. (Cal. Code Regs, tit. 15, §§ 2282, 2289, 2290.) [¶] The Board's decision that a prisoner is suitable for release precedes and is distinct from its choice of a base term fixing an actual release date. [Citations.] [¶] It is only when the prisoner has been found suitable for parole . . . that the Board proceeds to select the base term using a matrix of factual variables 'in a manner that will provide uniform terms for offenses of similar gravity and magnitude with respect to their threat to the public.' (§ 3041, subd. (a).) Unlike the suitability determination, 'The base term shall be established solely on the gravity of the base offense, taking into account all of the circumstances of that crime.' (Cal.Code Regs., tit. 15, § 2282, subd. (a).) [¶] Because the suitability determination focuses on the prisoner's danger to the public, while the base term reflects an appropriate sentence for the crime when compared to other comparable offenses, the date of the suitability determination may be earlier or later than the release date that is calculated using the base term. In some cases, the prisoner will be found suitable before he or she has spent time in custody equal to the length of the base term, and must remain in prison custody. In other cases, the time actually served by the prisoner will exceed the base term set by the Board, and the prisoner will be entitled to be released." (See also *Dannenberg*, *supra*, 34 Cal.4th at pp. 1078–1084.)

Thus, although the Board's designation of the 18-year base term reflects a determination that period was an appropriate sentence for petitioner's 1990 offense, he was not found suitable for release until four years later. "His custody during the period between his theoretical release date as calculated using the base term and the time he was finally found suitable for parole was entirely lawful; indeed, the Board could not have legally released him absent a determination that he was suitable for parole." (*Bush*, *supra*, 161 Cal.App.4th at p. 142; see also *Dannenberg*, *supra*, 34 Cal.4th at p. 1083 ["When the time comes to evaluate the individual life inmate's suitability for release on parole, the [Board] is authorized—indeed, required—to *eschew* term uniformity, based

5

simply on similar punishment for similar crimes, in the interest of *public safety in the particular case*."].)

This court's decision in *Bush*, *supra*, 161 Cal.App.4th 133, is instructive. There, the petitioner argued that time he was imprisoned in excess of the base term should be credited against his period on parole. (*Id.* at p. 138.) We concluded that, although it might be appropriate to provide such credit to someone imprisoned in excess of a *determinate* term, the Board's base term is *not* "the equivalent of a determinate sentence." (*Id.* at p. 144; see also *Lira*, *supra*, 58 Cal.4th at p. 582.) Instead, time served in excess of the base term is a period of lawful confinement pending a parole suitability determination. (*Bush*, at p. 144.) Similarly, the base term in the present case is not equivalent to a determinate sentence; petitioner's confinement on the 1990 murder conviction continued until it was determined he was suitable for parole.[5]

As further support for its construction of Section 1170.1(c), appellant points out that, as originally enacted in 1976, the statute did not provide for commencement of the term for the custodial offense when the offender "would otherwise have been released from prison." Instead, the provision originally stated, "the aggregate term of imprisonment for all convictions . . . shall be the remainder of the term for which he was confined plus the term of imprisonment specified by the judge for the crime committed while confined in a state prison." (Former § 1170.1a, added by Stats. 1976, ch. 1139, § 273, p. 5140, amended by Stats. 1977, ch. 165, § 17, p. 649.) Construing Section 1170.1(c) to provide for commencement of the sentence for the custodial offense at the time the parole grant is effective rather than at the conclusion of the base term gives effect to the Legislature's amendment. Although the prior version's reference to "the

---

[5] *Bush* distinguished the case relied upon by petitioner in the present case, *In re Hogan* (1986) 187 Cal.App.3d 819, 824, which stated, "[I]n setting a release date for an indeterminate sentence, [the Board] performs the same function as does the trial court in ordering a determinate sentence—it fixes a term of definite duration." (See *Bush*, *supra*, 161 Cal.App.4th at p. 144.) Regardless of the proper characterization of the base term, Section 1170.1(c) refers to the date the prisoner would be released from prison on the offense resulting in the indeterminate sentence, which is not the end of the base term if the prisoner has not been deemed suitable for parole.

remainder of the term" for the original offense could reasonably be construed to refer to either the end of the base term or the actual release date, the current language unambiguously commences the consecutive sentence on the custodial offense at the time the offender otherwise actually would have been released.

For the foregoing reasons, Section 1170.1(c)'s language "the time [petitioner] would otherwise have been released from prison" cannot reasonably be construed to refer to petitioner's completion of the 18-year base term in 2008, rather than the effective date of his parole suitability determination. Absent two reasonable constructions of the relevant statutory language, the statute is not ambiguous and the rule of lenity does not apply. (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1107 [a statute is ambiguous if "the language supports more than one reasonable construction"]; *Burris v. Superior Court* (2005) 34 Cal.4th 1012, 1022-1023 ["The rule of lenity, under which 'ambiguous penal statutes are construed in favor of defendants[,] is inapplicable unless two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner is impracticable.' "].)

The superior court also concluded that, even if the literal language of Section 1170.1(c) mandates using the effective date of the parole grant to mark the commencement of the sentence for the custodial offense, that construction should be rejected as leading to absurd results. "There are occasions, of course, when literal construction of a statute is not possible, either because the law's terms are critically ambiguous or because literal interpretation would create a logically absurd application of the law, one completely beyond the subject matter of the legislation or one directly contrary to its expressed intent. But we should reach that conclusion only after making a sincere and thorough attempt to apply a statute–however it was enacted–according to its terms." (*Hodges v. Superior Court* (1999) 21 Cal.4th 109, 120 (*Hodges*).) The superior court reasoned that, once petitioner had been imprisoned for the duration of the 18-year base term plus the consecutive sentence for his custodial offense (including credits), he

"had been adequately punished for his crimes by serving their full sentences, and he did not pose a danger to public safety according to the Parole Board."

Giving effect to the plain language of Section 1170.1(c) does not result in "a logically absurd application of the law." (*Hodges*, *supra*, 21 Cal.4th at p. 120.) The superior court concluded it is "unfair" to continue to confine a prisoner who has served an amount of time equivalent to the base term for an indeterminate sentence plus the duration of the consecutive sentence for a custodial offense. But this conclusion does not require us to characterize as "absurd" the contrary conclusion reached by the Legislature in Section 1170.1(c). It is well-established the Legislature intended that "in-prison crimes . . . be punished more severely than crimes committed 'on the outside.' " (*White*, *supra*, 202 Cal.App.3d at p. 869, quoting *People v. McCart* (1982) 32 Cal.3d 338, 340.) If the sentence for the custodial offense commenced at the end of the base term, then whenever the Board designated a base term of shorter duration than the actual time of confinement the offender would have reduced or no time added to his actual period of confinement due to commission of the custodial offense. (See *Bush*, at p. 142 [noting the possibility that, at the time of the parole suitability determination, "the time actually served by the prisoner will exceed the base term set by the Board"].) Commencing the consecutive sentence for the custodial offense on the date the prisoner otherwise actually would have been released on parole is consistent with the Legislature's intent to punish and deter criminality in prison.

In a related contention, petitioner argues appellant's construction of Section 1170.1(c) "violates the purpose of" the Determinate Sentencing Law (DSL) (§ 1170 et seq.), which implements the Legislature's intent that "the purpose of imprisonment for crime is punishment. This purpose is best served by terms proportionate to the seriousness of the offense with provision for uniformity in the sentences of offenders committing the same offense under similar circumstances." (§ 1170, subd. (a); see *Dannenberg*, *supra*, 34 Cal.4th at pp. 1077–1078.) Section 1170.1(c) seems consistent with the general purposes of the DSL, because the Legislature specifically intended to punish custodial offenses more harshly. In any event, petitioner points to no specific

8

language in any other part of the DSL that requires a different result in the present case, and we are required to follow the specific language of Section 1170.1(c). (Code Civ. Proc., § 1859 ["a particular intent will control a general one that is inconsistent with it"]; see *State Dep't of Pub. Health v. Superior Court of Sacramento County* (2015) 60 Cal.4th 940, 961.)

## DISPOSITION

The superior court's order granting the petition for writ of habeas corpus is reversed.

_____
SIMONS, Acting P.J.

We concur.

_____
NEEDHAM, J.

_____
BRUINIERS, J.

(A142734)

9

Superior Court of Marin County, No. SC188320A, Hon., Judge James T. Chou.

Kamala D. Harris, Attorney General, Jennifer A. Neill, Senior Assistant Attorney General, Phillip J. Lindsay and Brian C. Kinney, Deputy Attorneys General, for Appellant.

Marc Eric Norton, under appointment by the Court of Appeal, for Respondent.