Filed 6/23/25

<u>CERTIFIED FOR PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re THOMAS FLOYD BRISSETTE<br><br>On Habeas Corpus. | F089603<br><br>(Super. Ct. No. SC072218A) |

ORIGINAL PROCEEDINGS; petition for writ of habeas corpus. David Wolf, Judge.

Stephan L. Gunther for Petitioner.

Rob Bonta, Attorney General, Sara J. Romano, Amanda J. Murray and Andrew M. Gibson, Deputy Attorneys General, for Respondent.

-ooOoo-

Petitioner Thomas Floyd Brissette (Petitioner) was sentenced in 1985 by the Los Angeles County Superior Court (LASC) to 15 years to life plus seven years for murder. While in custody in state prison in Kern County on that sentence, petitioner was sentenced in 1998 by the Kern County Superior Court (KSC) to eight years for possession by an inmate of a controlled substance (methamphetamine), to be served consecutively to the 1985 murder conviction and sentence. In July 2024, the LASC and the KSC received separate notices from the California Department of Corrections and

Rehabilitation (CDCR) that petitioner qualified for compassionate release under Penal Code[1] section 1172.2. The KSC denied the petition for compassionate release. Two months later, the LASC granted the petition for compassionate release and ordered the CDCR to release petitioner. The CDCR acknowledged the LASC's order but refused to release petitioner and continued to enforce the eight-year sentence from the KSC. Petitioner filed a writ of habeas corpus with the California Supreme Court and sought a full release based on the LASC's order. The California Supreme Court ordered the Secretary of the CDCR (Respondent) to show cause why the writ should not be granted on the basis that section 1172.2 is irreconcilable with section 1170.1, subdivision (c) (hereafter 1170.1(c)) and transferred the matter to our court for resolution. We conclude that section 1172.2 is reconcilable with section 1170.1(c) and therefore, deny petitioner's writ.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1985, Brissette pled guilty to second degree murder (§ 187) and admitted to personally using a firearm during the commission of the murder (§ 12022.5). He also admitted to a prior serious felony conviction (§ 667, subd. (a)(1)). The trial court sentenced Brissette to 22 years to life in state prison. (*People v. Brissette* (Mar. 7, 2025, F088468) [nonpub. opn.] (*Brissette*).)

In 1997, while still imprisoned under the 1985 murder sentence, petitioner was discovered with two bindles of methamphetamine hidden in his mouth. (*Brissette*, *supra*, F088468.) In 1998, petitioner pled guilty in the KSC to a violation of section 4573.6 (possession of a controlled substance by an inmate) for possession of methamphetamine. Petitioner was sentenced to eight years, consecutive to the 1985 sentence for murder. Specifically, the judgment provides: "This case to be served consecutive to L.A. County Case A532808 for a total term of 15 yrs. to life plus 2 yrs. plus 5 yrs. plus 8 yrs."

---

[1] All further references are to the Penal Code unless otherwise noted.

2.

On July 10, 2024, the CDCR Director of Health Care Services sent two separate notifications, one to the LASC and one to the KSC, pursuant to section 1172.2, that petitioner met the clinical criteria for recall of sentence.

On August 9, 2024, the KSC denied petitioner's section 1172.2 petition. The KSC recounted petitioner's criminal record, prison disciplinary record, medical records, and medical condition and concluded that petitioner would pose an unreasonable danger to the public if released. Petitioner filed a notice of appeal the same day.

On September 30, 2024, the LASC granted petitioner's section 1172.2 petition. In relevant part, the LASC order read: "It is ordered that the previously imposed sentence be recalled in its entirety, which will result in the discharge of the above offender upon release from [CDCR's] jurisdiction. [CDCR] shall release the prisoner within 30 calendar days to a location where access to care is available."

On October 30, 2024, the CDCR sent an e-mail to petitioner's attorneys. The CDCR concluded that in order to release petitioner from custody, the KSC would need to recall the eight-year sentence. The CDCR explained:

> "Although [petitioner's] commitment offense (PC 187) sentence was recalled, his sentence for possession of a controlled substance in prison (PC 4573.6) was not. CDCR's position is that [the KSC] also needs to recall [petitioner's section] 4572.6 sentence. Penal Code section 1170.1(c) provides that when a person is convicted of a felony committed in state prison, and the term imposed for the offense is consecutive, the term of imprisonment shall commence from the time the person would otherwise have been release[d] from prison. [Petitioner] is therefore now serving his sentence for the in-prison offense (PC 4573.6), and this term began when his life sentence was recalled per [section] 1170.1."

On February 25, 2025, petitioner through counsel filed a petition for writ of habeas corpus with the California Supreme Court. The petition sought petitioner's release on grounds related to the LASC's section 1172.2 order.

On March 5, 2025, respondent filed an informal response to petitioner's petition for writ of habeas corpus and argued that relief was inappropriate.

3.

On March 7, 2025, our court affirmed the KSC's denial of compassionate release. The opinion noted that the LASC had granted petitioner relief under section 1172.2., but we emphasized that the appeal/order "concerns only [petitioner's] section 1172.2 petition with respect to the 1998 drug conviction in Kern County." We held that substantial evidence supported both an implied ruling that petitioner did not meet the medical criteria of section 1172.2 for release and an express ruling that defendant would pose a danger to the public if released. (*Brissette*, *supra*, F088468.)

On March 26, 2025, the California Supreme Court issued an order to show cause with a return to our court. The order reads in relevant part: "[Respondent] is ordered to show cause, returnable before the Court of Appeal, Fifth Appellate District, why relief should not be granted on the ground Penal Code section 1172.2 is irreconcilable with Penal Code section 1170.1, subdivision (c)." This order was filed in our court on April 4, 2025.

On April 28, 2025, respondent filed its return.

On May 5, 2025, petitioner filed his traverse.

On May 14, 2025, the Supreme Court denied review of our March 7, 2025 opinion upholding the KSC's section 1172.2 order.

## DISCUSSION

I. POTENTIALLY IRRECONCILABLE STATUTES

    *A.    Parties' Arguments*

        *1. Petitioner*

In his writ petition, petitioner argues in part that an inmate only serves a single sentence even if that sentence has multiple parts, includes a consecutive term under section 1170.1(c), and/or consists of multiple convictions from multiple counties. However, because section 1170.1(c) consecutive sentences are schematically viewed as separate and independent sentences, and because the CDCR sent two separate section 1172.2 notices to different courts, there is an irreconcilable ambiguity with respect to

4.

section 1172.2's compassionate release application when an unserved section 1170.1(c) consecutive sentence is involved. Petitioner argues that accepting respondent's position that two section 1172.2 hearings are necessary, one conducted by the court that imposed the initial outside-prison sentence and the later sentence conducted by the court that imposed the in-prison section 1170.1(c) sentence, leads to absurd results and is contrary to the intent behind section 1172.2, which clearly envisions a single proceeding. The LASC had jurisdiction to rule on the matter by virtue of the CDCR's section 1172.2 notice, and, under the rule of lenity[2], that order should be given effect.

### 2. Respondent

In an informal response to petitioner's petition, respondent argues in part that petitioner was not serving a single aggregate term. Because sentences imposed under section 1170.1(c) are separate and distinct from sentences imposed for conduct outside of prison, petitioner was serving two sentences. Since the KSC did not recall its sentence, respondent argues that petitioner is not entitled to release.

### 3. Respondent's Return

In their return, respondent argues in part that section 1170.1(c) and section 1172.2 are reconcilable. Respondent contends that consecutive sentences under section 1170.1(c) are separate and independent from an earlier outside-prison offense and do not begin to run until the outside-prison sentence has terminated. As separate and independent sentences, respondent argues section 1172.2. should be read as mandating that both the sentencing court for the outside-prison sentence and the sentencing court for the in-prison sentence perform separate section 1172.2 assessments. Respondent argues that this reading is supported by a number of considerations. First, by requiring the

---

[2] The rule of lenity " ' "generally requires that 'ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation.' " ' " (*People v. Reynoza* (2024) 15 Cal.5th 982, 1012.)

outside-prison sentencing court and the in-prison sentencing court to separately assess compassionate release, section 1172.2, subdivision (*l*) (hereafter 1172.2(*l*)), which requires that "the court who sentenced" a defendant must resolve a section 1172.2 petition, is given effect and the jurisdictional limitations of superior courts are respected. Second, it is consistent with section 1172.2, subdivision (i) (hereafter 1172.2(i)), which calls for "release" within 48 hours, because courts in the section 1170.1(c) context have interpreted "release" to be release from a sentence, not release from incarceration. Third, it is consistent with section 1172.2's goals of making compassionate release more accessible, saving prison health care costs, and the overriding goal of promoting public safety. Finally, respondent contends this interpretation avoids the absurd consequences of: making a separate independent sentence entirely nugatory; permitting a superior court that did not impose a separate sentence to recall that sentence; and giving an inmate with an in-prison sentence two opportunities to obtain compassionate release while an inmate without an in-prison offense has only one opportunity to obtain compassionate release.

### 4. Petitioner's Traverse

In his traverse, petitioner argues in part that section 1172.2 is irreconcilable with section 1170.1(c) because, while the statutory language of section 1172.2 makes it clear that a single proceeding is to occur, section 1170.1(c) operates to create a sentence for an in-prison crime that is separate and distinct from the sentence imposed for an outside-prison crime. Harmonization, as urged by respondent, is not possible, because the respondent's suggested interpretation would require the court to rewrite section 1172.2 to expressly provide for separate hearings. As the later enacted and more specific statute, section 1172.2's requirement of a single proceeding must control. Petitioner argues that the KSC order was entered without jurisdiction because at the time that the KSC ruled, petitioner was still serving the LASC sentence and the KSC sentence had not begun. Petitioner contends that because the KSC sentence had not begun, the KSC was not the appropriate court to rule on the section 1172.2 petition.

*B.      Legal Standard*

When interpreting a statute, a court's fundamental task is to determine the Legislature's intent so that the purpose of the statute may be effectuated.  (See *People v. Walker* (2024) 16 Cal.5th 1024, 1032; *People v. Ruiz* (2018) 4 Cal.5th 1100, 1105.)  Courts begin by giving the statute's words a plain, ordinary, and commonsense meaning and then consider the words within the entire context of the statutory framework, keeping in mind the nature and purpose of the statute.  (See *ibid.*)  If the statutory language is susceptible to more than one reasonable interpretation, then courts may consider extrinsic aids such as legislative history and public policy.  (See *Walker*, *supra,* at p. 1032; *Ruiz*, *supra,* at pp. 1105–1106.)  However, if the statutory language is clear, courts must follow the statute's plain meaning unless to do so would lead to an absurd result that the Legislature could not have intended.  (*People v. Reynoza, supra,* 15 Cal.5th at p. 989; *People v. Prudholme* (2023) 14 Cal.5th 961, 975.)

" 'Repeals by implication are not favored and are recognized only when there is a conflict between two or more legislative enactments.' "  (*In re White* (1969) 1 Cal.3d 207, 212; *People v. Sowers* (1995) 49 Cal.App.4th 230, 238.)  Because the law shuns repeals by implication, there is a strong presumption against implied repeals.  (*People v. Hazelton* (1996) 14 Cal.4th 101, 122.)  Courts "do not presume that the Legislature intends, when it enacts a statute, to overthrow long-established principles of law unless such intention is clearly expressed or necessarily implied."  (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 199.)  If reasonably possible, courts must " ' " harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions." ' "  (*Evan Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 838; *People v. Terwilligar* (2025) 109 Cal.App.5th 585, 596.)  Nevertheless, the duty of courts to harmonize two statutes when possible is " 'not a license to redraft the statutes to strike a compromise that the Legislature did not reach.' "  (*Lopez v. Sony Electronics, Inc.* (2018)

5 Cal.5th 627, 634; *In re Jenson* (2018) 24 Cal.App.5th 266, 275.)  If "no rational basis exists to harmonize the two … statutes and the statutes are irreconcilable, clearly repugnant, and so inconsistent that they cannot operate concurrently," then courts must find an implied repeal.  (*People v. Acosta* (2002) 29 Cal.4th 105, 122; see *Lopez*, *supra,* at p. 637.)  That is, where the two statutes are truly in conflict, "one must be interpreted as providing an exception to the other."  (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 956; *Jenson*, *supra,* at p. 275.)  In such a case, " 'later enactments supersede earlier ones [citation], and more specific provisions take precedence over' the more general."  (*People v. Adelmann* (2018) 4 Cal.5th 1071, 1079; see *Lopez*, *supra,* at p. 634; *Jenson*, *supra,* at p. 275.)

C.     Discussion

The parties disagree whether section 1172.2 and section 1170.1(c) can be harmonized.  To resolve this dispute, we first examine and interpret the two statutes separately.  Once we have determined the meaning and requirements of the two statutes, we then interpret the statutes together.  Through this process, we conclude that the two statutes are reconcilable.

1. Operation of Section 1172.2

a. Section 1172.2 Framework

California law authorizes the compassionate release of prisoners through section 1172.2.[3]  (*People v. Lewis* (2024) 101 Cal.App.5th 401, 403.)  Pursuant to section 1172.2, if the statewide chief medical executive after appropriate consultation determines that an incarcerated person meets two statutorily established medical criteria[4], the CDCR

---

[3]     Compassionate release is unavailable, however, to inmates serving a death sentence or a sentence of life without the possibility of parole.  (§ 1172.2, subd. (o).)

[4]     The two criteria are that the inmate:  (1) has a serious and advanced illness with an end-of-life trajectory; or (2) is permanently medically incapacitated to such a degree that he cannot complete basic activities of daily life.  (§ 1172.2, subd. (b).)

8.

"shall recommend to the court that the incarcerated person's sentence be recalled." (§ 1172.2, subds. (a), (b); *People v. Multani* (2024) 106 Cal.App.5th 1334, 1342 (*Multani*).) Within 10 days of receipt of a recommendation for compassionate release by CDCR, "the court shall hold a hearing to consider whether the incarcerated person's sentence should be recalled." (§ 1172.2, subd. (c).) "If possible, the matter shall be heard before the same judge of the court who sentenced the incarcerated person." (§ 1172.2(i).) If the trial court finds that the incarcerated person does in fact meet either of the two medical criteria, then a presumption in favor of recall and resentencing arises. (§ 1172.2, subd. (b) (hereafter 1172.2(b)); *Multani*, *supra,* at p. 1342; *Lewis*, *supra,* at p. 408.) The presumption "may only be overcome" if the trial court finds, "based on the incarcerated person's current physical and mental condition," that the incarcerated person would pose "an unreasonable risk of danger to public safety" if the sentence is recalled. (§ 1172.2(b); *Multani*, *supra,* at p. 1343; *Lewis*, *supra,* at pp. 408–409.) An "unreasonable risk of danger" is defined through incorporation of section 1170.18 (§ 1172.2(b)), to mean an unreasonable risk that the incarcerated person will commit a new "super strike," which is any violent felony listed under section 667, subdivision (e)(2)(C)(iv). (*Multani*, *supra,* at p. 1343; §§ 1172.2(b), 1170.18.) "If the court grants the recall and resentencing application, the incarcerated person shall be released by the department within 48 hours of receipt of the court's order, unless a longer time period is agreed to by the incarcerated person. At the time of release, the warden … shall ensure that the incarcerated person has … a discharge medical summary, full medical records, state identification, parole or postrelease community supervision medications, and all [of their] property …. After discharge, any additional records shall be sent to the incarcerated person's forwarding address." (§ 1172.2(*l*).)

### b. Section 1172.2 Mandates a Single Court Determine a Compassionate Release Petition

The parties dispute whether section 1172.2 mandates a single court or multiple courts determine a compassionate release petition. We conclude that section 1172.2 mandates a single court.

First, throughout section 1172.2, the Legislature referred to actions by or directed to "the court" thirteen times. (See § 1172.2, subds. (a), (b), (c), (e), (h), (i), (j), (k), (*l*), (p).) Significantly, this includes having "the same judge of the court who sentenced the incarcerated person," that is "the sentencing court," to resolve the section 1172.2 petition. (§ 1172.2(i).) At no point does section 1172.2 refer to "the courts" plural (§ 1172.2), and only once refers to "a court" in a sentence that also refers to "the court." (§ 1172.2(b).) The Legislature's choice to use definite articles is significant. (*Rapanos v. United States* (2006) 547 U.S. 715, 732–733; *North American Title Co. v. Superior Court* (2024) 17 Cal.5th 155, 174–175; *Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1396– 1397.) "Use of the indefinite articles 'a' or 'an' signals a general reference, while use of the definite article 'the' (or 'these' in the instance of plural nouns) refers to a specific person, place, or thing." (*Pineda, supra,* at p. 1396; *Robinson v. Superior Court* (2023) 88 Cal.App.5th 1144, 1166; *Lincoln Unified School Dist. v. Superior Court* (2020) 45 Cal.App.5th 1079, 1094.) Because the Legislature prolifically referred to "the court" throughout section 1172.2, the use of the definite article "the" indicates only a single court will resolve a section 1172.2 petition.

Second, section 1172.2(*l*) shows that when a section 1172.2 petition is granted, the consequence is the expedited physical release of the inmate from CDCR's custody. Specifically, section 1172.2(*l*) requires the CDCR to release the inmate within 48 hours of the court granting the inmate's petition unless the inmate agrees to additional time in custody. (§ 1172.2(*l*).) At the time the inmate is released by CDCR, CDCR is required to ensure the inmate has his property, identification, a medical discharge summary, all

medical records, and medications. (*Ibid.*) Section 1172.2(*l*) says nothing about any additional section 1172.2 hearings in other courts, nor does section 1172.2(*l*) place any judicial or administrative caveats on physical release from custody (other than the inmate's own consent) or provide a mechanism for additional involuntary custody if compassionate release is granted. If multiple courts or proceedings were contemplated by section 1172.2, then section 1172.2(*l*) would include caveats to the inmate's speedy release or expressly state that the inmate's ultimate release could depend on additional proceedings by different courts. Instead, section 1172.2(*l*) flatly provides for a definitive release date by CDCR, requires CDCR to provide the inmate with specific items that are obviously meant to help the inmate live and obtain medical care outside of prison, and allows for a longer release date only if agreed by the inmate. Therefore, section 1172.2(*l*)'s mandate of an expedited physical release from the granting of a section 1172.2 petition is consistent with a single court conducting a single proceeding.

To the extent respondent argues that section 1172.2(*l*)'s use of the term "release" means release from a particular sentence and not a release from custody, we disagree. Respondent relies primarily on *In re Coleman* (2015) 236 Cal.App.4th 1013 (*Coleman*). However, *Coleman* dealt with the question of when a section 1170.1(c) term for an in-prison offense begins to run when the outside-prison term is a life sentence; it did not involve section 1172.2. (*Coleman, supra,* at p. 1016.) Additionally, respondent's argument is inconsistent with the provisions of section 1172.2(*l*). If "release" meant "release" from a term of imprisonment and not release from custody, there would be no need to ensure that the inmate has identification, all of his property, and medical records upon "release" because all of those items would still be in the inmate's possession or with the prison's healthcare providers. There would also be no need to provide an exception to the release date based on the inmate's consent because a release from a term of imprisonment would generally involve only administrative notations regarding a sentence; the inmate would still remain in custody. Further, as explained below, a release

11.

from only one sentence does not further section 1172.2's goals of saving healthcare expenses or expanding the criteria of, and streamlining the process for, compassionate release. (*People v. Loper* (2015) 60 Cal.4th 1155, 1160 (*Loper*); *Multani, supra*, 106 Cal.App.5th at pp. 1345–1347.) Finally, a Senate committee analysis of section 1172.2 notes that, under section 1172.2's predecessor (former § 1170, subd. (e)), if compassionate release was granted, the inmate was "no longer subject to the jurisdiction of the [CDCR] …." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 960 (2021-2022 Reg. Sess.) as amended May 27, 2022, p. 6.) If an inmate is no longer under CDCR jurisdiction, it means that the CDCR no longer has custody of the inmate. We detect nothing in section 1172.2 that would be contrary to applying the Senate committee's observation to section 1172.2. (Cf. *In re Brown* (2024) 104 Cal.App.5th 969, 981 (*Brown*) [noting that courts may consult legislative history to confirm an interpretation of a statute that is apparent from the plain language].) For these reasons, we reject respondent's argument that section 1172.2's use of the term "release" could mean release from a term of imprisonment and not a release from custody.

Third, having multiple courts determine a section 1172.2 petition is contrary to the purposes of section 1172.2. Section 1172.2 became effective on January 1, 2023, and amended the existing procedures for compassionate release. (*Nijimeddin v. Superior Court* (2023) 90 Cal.App.5th 77, 80.) The Legislature intended for section 1172.2 to "broaden the eligibility criteria for compassionate release and make it available to more incarcerated persons." (*Multani, supra,* 106 Cal.App.5th at p. 1345.) Section 1172.2 was also intended to save California taxpayers the high costs of health care for terminally ill

12.

or aging inmates[5] and to streamline the cumbersome process for obtaining compassionate release.  (See *Multani, supra,* at p. 1346–1347; see also *Loper, supra,* 60 Cal.4th at p. 1160; *Martinez v. Board of Parole Hearings, supra,* 183 Cal.App.4th at p. 590–591 (*Martinez*).)  According to the author of section 1172.2 (whose comments were part of the legislative record and analyses) many inmates who did not pose a risk to public safety would die in prison while awaiting a referral for compassionate release, which in part resulted in California bearing the health care expenses of those inmates.  (*Multani, supra,* at p. 1346; Assem. Conc. Sen. Amends. to Assem. Bill No. 960 (2021-2022) Reg. Sess., as amended Aug. 16, 2022, p. 3; Sen. Com. on Public Safety, Analysis of Assem. Bill No. 960 (2021-2022 Reg. Sess.) as amended May 27, 2022, p. 5; see also *In re Jennings* (2004) 34 Cal.4th 254, 264 [considering the comments of a bill's author where those comments were incorporated in the Assembly committee report/analysis of the bill]; *People v. Falcon* (2023) 92 Cal.App.5th 911, 925–926 [same], disapproved on other grounds in *People v. Lynch* (2024) 16 Cal.5th 730.)  To interpret section 1172.2 as permitting multiple courts to resolve compassionate release petitions would hinder section 1172.2's legislative goals by creating an additional barrier to a subset of inmates who are otherwise eligible for compassionate release.  This subset of inmates would have

---

**5**     The *Multani* court was uncertain about this purpose and noted that the legislative history "does not so emphatically indicate that a predominate purpose … was to increase fiscal savings." (*Multani, supra*, 106 Cal.App.5th at p. 1347.)  Nevertheless, section 1172.2's author recognized that the existing procedure caused Californians to pay for "costly health care services" for inmates who ultimately died in prison (*Multani, supra,* at p. 1346), and the Assembly Committee on Public Safety analysis of section 1172.2 noted the high costs of caring for an aging prison population.  (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 960 (2021-2022 Reg. Sess.) as amended Apr. 12, 2021, p. 6.)  Moreover, courts have recognized that saving the expense of costly health care was a primary purpose behind section 1172.2's predecessor, former section 1170, subdivision (e).  (*Loper*, *supra*, 60 Cal.4th at p. 1160; *Multani, supra,* at p. 1347; *Martinez v. Board of Parole Hearings* (2010)183 Cal.App.4th 578, 590–591.)  Given these considerations, we have no issue with recognizing that the intent to save money is a legislative purpose of section 1172.2.

13.

to present the same evidence and information to a second court and then wait additional time for the second court to conduct a hearing and then make a ruling. If the courts reach different conclusions after viewing the same evidence and information, then appeals and/or writ proceedings will ensue, and the inmate will remain in custody until those appeals or writs are resolved. It is possible that the inmate could die while awaiting resolution of his compassionate release petition in the same manner as described by section 1172.2's author. Such a result forces an inmate to navigate a cumbersome legal process and would require California to continue to bear costly healthcare expenses, expend substantial amounts of judicial resources, and keep an inmate who meets the expanded criteria for release (at least according to one court) in prison. We cannot find that respondent's interpretation furthers or is consistent with section 1172.2's legislative purposes.[6] In contrast, limiting the compassionate release process to a single proceeding before a single court eliminates the possibility of conflicting rulings, provides a streamlined process with a single track for the inmate to pursue appellate relief, minimizes the expenditure of judicial resources, and, if the section 1172.2 petition is granted, ensures both that California incurs no more healthcare costs and that the inmate is expeditiously released from custody.

Finally, and relatedly, interpreting section 1172.2 to encompass multiple hearings in front of multiple courts could lead to absurd results as illustrated by this case. Here,

---

[6] Respondent argues that having two hearings before different courts furthers section 1172.2's legislative purpose of protecting public safety. Respondent relies on section 1172.2, subdivision (b), which in part permits a court to deny compassionate release on a showing that the inmate would pose an unreasonable risk to the public. However, section 1172.2, subdivision (b) is not a statement of legislative intent or purpose; rather, this part of the statute is a safety valve that ensures inmates who continue to be a danger to the public are not released, irrespective of their medical condition. (§ 1172.2(b).) The remainder of section 1172.2's numerous subdivisions address the procedure for processing a section 1172.2 petition and releasing an inmate. We think respondent reads too much into section 1172.2, subdivision (b).

two different superior courts received notice from the CDCR at roughly the same time. Two different superior court judges reviewed the same information from CDCR pertaining to petitioner. Two separate hearings were held in two separate counties. Despite reviewing the same information, the two judges reached opposite conclusions and issued conflicting orders. After finding that section 1172.2's medical criteria had been met and that petitioner did not pose an unreasonable danger to the public, the LASC ordered petitioner's immediate release. The KSC reached precisely the opposite conclusions. Again, after reviewing the same information as the LASC, the KSC impliedly found that petitioner did not meet the criteria for medical release and expressly held he would pose a danger to the public if released. Because multiple superior courts were involved, there has been: (1) an order by one court that requires the CDCR to release petitioner from custody; (2) an order by another court that effectively keeps petitioner in custody; (3) an appellate opinion affirming the order denying compassionate release; (4) an appeal to the California Supreme Court regarding the denial of release; and (5) this writ proceeding, which originated in the California Supreme Court before being transferred to us. Also, as suggested by respondent in their return, the KSC and LASC conflicting rulings raise the possibility that the doctrine of issue preclusion may be implicated. It appears that application of issue preclusion in this context is an issue of first impression.[7] The collective absurdity of the conflicting rulings based on a review of identical information, the novel legal issues implicated, the separate appellate paths involved, and the significant expenditure of judicial resources would be avoided if section 1172.2 is interpreted to mean that a single court is to resolve an inmate's section 1172.2 petition.

[7] Because it is an issue of first impression, and because no party has adequately argued that this writ should be decided through issue preclusion, we express no opinion as to the effect that issue preclusion may have in petitioner's case.

For these reasons, we hold section 1172.2 requires that a single court resolve an inmate's petition for compassionate release.

### 2. Operation of Section 1170.1(c)

#### a. Section 1170.1 Framework

"Consecutive sentencing is governed by section 1170.1 …." (*People v. Palacios* (2007) 41 Cal.4th 720, 730, fn. 5.) Section 1170.1, subdivision (a) (§ 1170.1(a)) provides that, for cases in which a defendant is convicted of multiple offenses that carry a determinate term, and the trial court imposes consecutive sentences for those multiple offenses, an aggregate sentence is to be imposed that consists of a full principal term (the offense with the longest term of imprisonment), subordinate terms (any offense consecutive to the principal term and generally one-third of the middle term), and enhancements. (See § 1701.1(a); *People v. Felix* (2000) 22 Cal.4th 651, 655; *Coleman*, *supra*, 236 Cal.App.4th at pp. 1018–1019; *People v. White* (1988) 202 Cal.App.3d 862, 868 (*White*).)

Convictions for felonies committed while a defendant is imprisoned in a state prison are exempt from the section 1170.1(a) sentencing scheme. (§ 1170.1(c); *People v. Brantley* (2019) 43 Cal.App.5th 917, 921–922 (*Brantley*); *White*, *supra*, 202 Cal.App.3d at p. 868; *People v. Holdsworth* (1988) 199 Cal.App.3d 253, 256 (*Holdsworth*); *In re Sims* (1981) 117 Cal.App.3d 309, 313 (*Sims*).) Instead, in-prison felonies that are ordered or required by law to be served consecutively are governed by section 11701.1(c). (*People v. Landry* (2016) 2 Cal.5th 52, 105 (*Landry*); *Coleman*, *supra*, 236 Cal.App.4th at p. 1019; *White*, *supra,* at pp. 869; *Sims*, *supra,* at p. 313.) Section 1170.1(c) reads:

> "In the case of any person convicted of one or more felonies committed while the person is confined in the state prison … and the law either requires the terms to be served consecutively or the court imposes consecutive terms, the term of imprisonment for all the convictions that the person is required to serve consecutively shall commence from the time the person would otherwise have been released from prison. If the new offenses are consecutive with each other, the principal and subordinate

terms shall be calculated as provided in subdivision (a). This subdivision shall be applicable in cases of convictions of more than one offense in the same or different proceedings."

Section 1170.1(c) treats in-prison offenses differently from section 1170.1(a) outside-prison offenses because the "Legislature wanted in-prison crimes to be punished more severely than crimes committed [outside-prison]." (*Landry*, *supra*, 2 Cal.5th at p. 105; *Coleman*, *supra*, 236 Cal.App.4th at p. 1018; *White*, *supra*, 202 Cal.App.3d at p. 869.) Sentences governed by section 1170.1(c) are longer than sentences governed by section 1170.1(a) because a section 1170.1(c) sentence is fully consecutive to the offense for which the defendant was imprisoned. (See *Brown*, *supra*, 104 Cal.App.5th at p. 974; *Brantley*, *supra*, 43 Cal.App.5th at p. 922; *White*, *supra*, at p. 869.) That is, "under section 1170.1(c), a term for an in-prison offense or multiple in-prison offenses begins to run at the end of the prison term imposed for the original [outside-prison] offenses." (*In re Tate* (2006) 135 Cal.App.4th 756, 764–765 (*Tate*); see also *Brown*, *supra*, at p. 974; *People v. Walkkein* (1993) 14 Cal.App.4th 1401, 1409–1410.) This is true whether the outside-prison offense involves an indeterminate sentence or a determinate sentence. (*Brown*, *supra*, at p. 974; *In re Thompson* (1985) 172 Cal.App.3d 256, 258.) The fully consecutive sentence imposed under section 1170.1(c) for an in-prison offense is often called a "*Thompson* term," in reference to *In re Thompson*.[8] (*Brown*, *supra*, at p. 974.)

### b. Section 1170.1(c) Sentencing Scheme for Consecutive In-Prison Sentence

Recently in *Brown*, our court examined the effect of a *Thompson* term on an inmate's eligibility for parole under section 3055, the Elderly Parole Program. (*Brown*, *supra*, 104 Cal.App.5th at p. 973.) Parole under section 3055 is generally available to inmates who are at least 50 years old and have served at least 20 years "of continuous incarceration on the inmate's *current* sentence …." (§ 3055, subd. (a), italics added;

---

[8] We will use the phrases "*Thompson* term" and "section 1170.1(c) term" interchangeably.

*Brown*, *supra,* at p. 976.) However, section 3055 excludes "cases in which sentencing occurs pursuant to [the Three Strikes law]." (§ 3055, subd. (g); *Brown*, *supra,* at p. 977.) The petitioner in *Brown* had an outside-prison term of life plus four years and a fully consecutive four-year *Thompson* term. (*Brown*, *supra,* at p. 974.) The *Thompson* term was imposed through the Three Strikes law. (*Brown, supra,* at p. 973.) Although the board found the petitioner suitable for parole under section 3055, the CDCR informed the petitioner that he would begin to serve the *Thompson* term once parole became effective. (*Brown, supra,* at p. 975.) The petitioner contended that he was entitled to a full release because his outside-prison offense was not imposed under the Three Strikes law. (*Id.* at p. 977.) The petitioner focused on section 3055, subdivision (a)'s use of the term "current sentence" and argued that his "current sentence" was the sentence on his outside-prison offense because his fully consecutive *Thompson* term had not yet begun. (*Brown, supra,* at p. 978.) The petitioner's argument was rejected. (*Id.* at pp. 979–980.) *Brown* focused on the meaning of the term "sentence." (*Ibid.*) *Brown* explained that neither the Penal Code in general nor section 3055 in particular defined "sentence." (*Brown, supra,* at p. 979.) "However, published opinions have consistently held that, although a criminal sentence may comprise multiple terms, it is nevertheless considered a single aggregate sentence." (*Ibid.*) *Brown* further noted that a " 'person sentenced for convictions in multiple cases receives a single sentence.' " (*Ibid.*, quoting *In re Bolton* (2019) 40 Cal.App.5th 611, 624.) *Brown* presumed "the Legislature was aware of the decisional authority that treats a 'sentence' as a single term of imprisonment even if it comprises multiple components." (*Ibid.*) The *Brown* court believed that to adopt the petitioner's argument would have required it to "alter the plain language [of section 3055] to accomplish a purpose that does not appear on its face." (*Id.* at p. 980.) Accordingly, *Brown* determined that the petitioner's " 'current sentence' included both his [initial] indeterminate term and his [later] fully consecutive determinate term." (*Ibid.*) Because the petitioner's " 'current sentence' had a term imposed under the Three Strikes

law," the petitioner's " 'current sentence' rendered him ineligible for parole release pursuant to the Three Strikes exclusion in section 3055." (*Ibid*.)

Admittedly, unlike *Brown*, this case does not deal with section 3055. Nevertheless, it was necessary for *Brown* to determine the nature of the petitioner's sentence in light of the Three Strikes *Thompson* term. Under *Brown*, an inmate is considered to have a single total sentence even when the inmate has yet to begin serving a *Thompson* term. Respondent does not address this aspect of *Brown*.[9] Instead, respondent argues that petitioner is serving two sentences and relies on cases that have characterized *Thompson* terms as being distinct and separate from terms for outside-prison offenses. Petitioner's traverse agrees with respondent on this point.[10] We are not convinced by the parties' argument.

Section 1170.1(c) acts to exempt in-prison offenses from the sentencing scheme of section 1170.1(a). (*Brantley*, *supra*, 43 Cal.App.5th at p. 922; *White*, *supra*, 202 Cal.App.3d at p. 869; *Holdsworth*, *supra*, 199 Cal.App.3d at p. 256; *Sims*, *supra*, 117 Cal.App.3d at p. 313.) That is, "[section 1170.1(c)] provides an exception to the general

---

[9]     Respondent does quote the last sentence of *Brown*, which is dicta and reads: "[a]n inmate, like petitioner, who is found eligible for early parole under section 3055 must nevertheless complete any *Thompson* term imposed pursuant to the Three Strikes law." (*Brown*, *supra*, 104 Cal.App.5th at p. 985.) Preceding this sentence, the *Brown* court explained: "[T]his opinion does not call into question the parole board's consideration of petitioner's suitability for early parole and the early termination of his indeterminate term." (*Ibid*.) We think that *Brown*'s dicta is a recognition of two things. First, if an inmate has an outside-prison life term, a *Thompson* term cannot begin to run until the parole board grants parole on that outside-prison life term. (*Coleman*, *supra*, 236 Cal.App.4th at pp. 1019–1020.) Second, as explained *post*, *Thompson* terms are a component of a single sentence and are derived and operate separately from an outside-prison term component. As a result, parole through section 3055 could operate to end the outside-prison term component, but not the Three Strikes *Thompson* term component and thus, not the single total sentence.

[10]     We note that petitioner in his writ petition relied heavily on *Brown* to argue that he only has a single sentence.

19.

sentence computation provisions of [section 1170.1(a)] ….” *People v. Logsdon* (1987) 191 Cal.App.3d 338, 342.) For purposes of section 1170.1, “aggregate” is a “sentencing word of art meaning the total term of imprisonment computed by adding the principal term, the subordinate term, and any [applicable enhancements.]” (*White*, *supra,* at p. 868.) An in-prison offense is not subject to being “aggregated” through section 1170.1(a) with an outside-prison term, meaning that a *Thompson* term is not set at one-third of the middle term and then added to the outside-prison principal offense as a subordinate offense, or vise versa.[11] (*Logsdon*, *supra,* at p. 342; *Sims*, *supra,* at pp. 313–314; see also *Brantley*, *supra,* at p. 922; *White*, *supra,* at p. 869; *Holdsworth*, *supra,* at p. 256.) Instead, section 1170.1(c) requires that the in-prison offense be fully consecutive to the outside-prison offense. (*Brantley*, *supra,* at p. 922; *White*, *supra,* at p. 869; *Holdsworth*, *supra,* at p. 256; *Sims*, *supra,* at pp. 313–314.) To meet this timing requirement, when imposing a sentence, an in-prison section 1170.1(c) term is in effect “ ‘treated as a new principal term rather than as a subordinate term to the [outside-prison] offense’ ” because it cannot be “aggregated” into a prior outside-prison offense through application of section 1170.1(a). (*White*, *supra*, at pp. 869–870; see *Brantley*, *supra*, at p. 922; *Coleman*, *supra*, 236 Cal.App.4th at p. 1019; see also *People v. Langston* (2004) 33 Cal.4th 1237, 1242 [noting that when imposing a sentence, “new crimes committed while in prison are *treated* as separate offenses and begin a new aggregate term.” (Italics added)].) That is, “[t]he first [section 1170.1(c) term] becomes, *in effect*, a new ‘principal’ term rather than one ‘subordinate’ to the outside offense term, as could occur under [section 1170.1(a)].” (*People v. Reed* (1993) 17 Cal.App.4th 302, 305 [italics added].) However, simply because the section 1170.1(c) term is *treated in effect* as if it

---

[11]    We make this statement in the context of an inmate who has only one *Thompson* term. If an inmate has multiple *Thompson* terms, those terms are aggregated together in the manner prescribed by section 1170.1(a) to form one aggregated section 1170.1(c) term. (§ 1170.1(c); *People v. McCart* (1982) 32 Cal.3d 338, 340.)

were a new principal term in relation to section 1170.1(a) does not mean that an inmate with a *Thompson* term is *actually* serving two sentences.

As explained by *White*, "the [section 1170.1(c) term for] an in-prison offense does not become part of the aggregate prison term imposed for *those* offenses which were committed 'on the outside' [of prison]. Instead the defendant is imprisoned for *a total term* consisting of the *sum* of his aggregate sentence computed under section 1170.1(a) *plus* the new aggregate term imposed under section 1170.1(c)." (*White, supra,* 202 Cal.App.3d at p. 870, italics added; see *People v. Escobedo* (2023) 95 Cal.App.5th 440, 452; *Tate, supra,* 135 Cal.App.4th at p. 765.) "Under a 'box theory' the outside offense and attending enhancements are computed under section 1170.1(a) within the confines of one box. Under section 1170.1(c), the in-prison offenses and enhancements are computed according to section 1170.1(a)[12] in a separate box. *The total term is computed by adding the totals of the two boxes together.*" (*White, supra,* at p. 870, italics added.) The requirement that a sentencing court add the prior outside term to the new *Thompson* term in order to reach a "total sentence" shows that the result will yield but one sentence.

*White*'s description of how section 1170.1(c) operates is entirely consistent with the analysis in *Brown*. *White* described the process of finding an inmate's "total sentence" by adding the terms imposed through section 1170.1(a) together with a term imposed through section 1170.1(c). (*White, supra,* 202 Cal.App.3d at p. 870.) Likewise, *Brown* described a single "current sentence" that was composed of an outside-prison indeterminate term and a fully consecutive in-prison section 1170.1(c) term. (*Brown, supra,* 104 Cal.App.5th at p. 980.) This is also consistent with authority that has recognized, albeit in the context of credit accrual, that "consecutive sentences, even if regarded as separate and distinct for some purposes, necessarily coalesce into one

---

**12** Again, multiple in-prison offenses are aggregated together in the manner prescribed by section 1170.1(a) to form one aggregated section 1170.1(c) term. (§ 1170.1(c); *People v. McCart, supra,* 32 Cal.3d at p. 340.)

aggregate term of confinement during which the prisoner is continuingly restrained of his liberty." (*In re Cowen* (1946) 27 Cal.2d 637, 647.)

The methodology of *White* and *Brown* is also reflected in the sentence in this case as it appears in the abstract of judgment. As quoted above, the abstract of judgment reads: "This case to be served consecutive to the L.A. County Case A532808 for a total term of 15 yrs. to life plus 2 yrs. plus 5 yrs. plus 8 yrs." As can be seen, there is a total term that is identified, and the total term is composed of the outside-prison term (15 years to life plus seven years) and the in-prison term (eight years), which is exactly as described by *White* and *Brown*. (*Brown*, *supra,* 104 Cal.App.5th at p. 980; *White*, *supra,* 202 Cal.App.3d at p. 870.) While the abstract does not expressly state that the eight-year sentence begins to run at the end of the 15 years to life plus seven years sentence, it is the operation of section 1170.1(c) that provides the unspoken clarification that actual service on the *Thompson* term component will begin only when the outside-prison term component ends. (*Landry*, *supra*, 2 Cal.5th at p. 105.)

At its core, section 1170.1(c) does not actually operate to impose two entirely separate and independent sentences. Instead, section 1170.1(c) is a technical sentencing statute that addresses when an inmate begins " 'to serve' consecutive sentences" and "the time during which an inmate is actually serving a particular prison term …." (*Landry*, *supra*, 2 Cal.5th at p. 105.) As recognized by both *Brown* and *White*, when a *Thompson* term is involved, there remains a single total sentence. That single total sentence is composed of two separate and distinct components: an outside-prison term and a *Thompson* term that are calculated and derived separately from each other. The inmate will begin serving the *Thompson* term component only after his outside-prison term component has ended. (*Brown*, *supra,* 104 Cal.App.5th at pp. 974, 980; *White*, *supra,* 202 Cal.App.3d at pp. 869–870.) In other words, because a section 1170.1(c) *Thompson* term operates and is derived separately from both an outside-prison term and the sentencing scheme of section 1170.1(a), it is a separate and distinct component of an

22.

inmate's single total sentence.[13]  (See *Brown*, *supra*, at p. 980; *White*, *supra*, at pp. 869–870; see also *Holdsworth*, *supra*, 199 Cal.App.3d at p. 256; *Sims*, *supra,* 117 Cal.App.3d at pp. 313–314.)

In sum, when a court imposes a *Thompson* term/section 1170.1(c) term on an inmate, the inmate still has only one sentence.  (See *Brown*, *supra*, 104 Cal.App.5th at p. 980; *White*, *supra*, 202 Cal.App.3d at pp. 869–870; cf. also *In re Cowen*, *supra*, 27 Cal.2d at p. 640.)

### 3.   *Section 1170.1(c)'s Interaction with Section 1172.2*

With the understanding that section 1172.2 mandates that a single court resolve an inmate's compassionate release petition, and that a *Thompson* term is merely a separate and distinct component of a single total sentence, it is possible to harmonize section 1170.1(c) and section 1172.2.

Section 1172.2(i) directs that the judge of the sentencing court (if possible) is to resolve the section 1172.2 petition.  (§ 1172.2(i).)  When a sentence is imposed on an inmate in multiple cases, there is but one sentence.  (*Brown*, *supra*, 104 Cal.App.5th at p. 973; *In re Bolton*, *supra*, 40 Cal.App.5th at p. 624.)  Each time an inmate receives a new term in multiple cases, the inmate's sentence is considered to be a resentencing. (Couzens, Bigelow & Prikett, Sentencing California Crimes (The Rutter Group 2025), Prison Sentence with Multiple Cases, § 14:3 (hereafter Couzens, § 14.3) ["The sentencing of multiple cases results in a resentencing of the defendant."].)  The effect is that the latest court to impose a sentence on an inmate in a multiple case situation is

---

[13]     Because a section 1170.1(c) term is a component of a single sentence, but is calculated separately and distinctly from, and begins to run after the conclusion of, the outside-prison term component, dual enhancements may be applied to both terms (*White*, *supra*, 202 Cal.App.3d at p. 870), good credit time may be earned at different rates for the terms (*Tate*, *supra*, 135 Cal.App.4th at p. 765), and relief applicable to an outside-prison term will be unavailable once the outside-prison term ends, even though the inmate is serving the in-prison term component of his single total sentence.  (*People v. Escobedo*, *supra*, 95 Cal.App.5th at pp. 451–452.)

considered to be the sentencing court. (See *People v. Phoenix* (2014) 231 Cal.App.4th 1119, 1126;[14] see also Couzens, § 14.3.) The prior courts are no longer considered to be a sentencing court. (*Phoenix*, *supra*, at p. 1126 ["The Sacramento County trial court was no longer a sentencing court, as its sentence was replaced by the consecutive sentence imposed by the Yolo County trial court."].) Therefore, when a court imposes a *Thompson* term on an inmate, and the *Thompson* term is the last term that has been imposed, the court that imposed the *Thompson* terms is considered to be the inmate's sentencing court. (See *Phoenix*, *supra*, at p. 1126; Couzens, § 14.3.) All courts prior to the *Thompson* term are no longer the sentencing court. (See *Phoenix*, at p. 1126; Couzens, § 14.3.)

As applied to this case, the KSC was the last authorized court to impose a sentence on the petitioner, which was the *Thompson* term. Therefore, the KSC was the sentencing court for petitioner's single total sentence for purposes of section 1172.2(i). (See *Phoenix*, *supra*, 231 Cal.App.4th at p. 1126; Couzens, § 14.3.) Because the KSC as the sentencing court ruled on petitioner's section 1172.2 petition, the provisions of both section 1170.1(c) and section 1172.2 were properly applied.

---

[14] We recognize that *Phoenix* involved section 1170.1(a), not section 1170.1(c), and that section 1170.1(a) specifically requires the aggregation of determinate sentences even if the principal and subordinate sentences originate from different courts. (§ 1170.1(a).) Nevertheless, as explained in *White* and *Brown*, an inmate with a section 1170.1(c) term still has a single total sentence. Because a single sentence results after the imposition of a *Thompson* term, we detect no reason why *Phoenix*'s analysis would not apply in this case.

24.

Accordingly, we do not find that section 1170.1(c) and section 1172.2 are irreconcilable. Because section 1170.1(c) and section 1172.2 are reconcilable, we deny petitioner's writ.[15]

## DISPOSITION

The order for respondent to show cause is discharged. Petitioner's writ of habeas corpus is denied.

FRANSON, Acting P. J.

WE CONCUR:

MEEHAN, J.

DE SANTOS, J.

---

[15]    We note that our Supreme Court ordered the respondent to show cause why petitioner's writ should not be granted because sections 1170.1(c) and 1172.2 are irreconcilable. The Supreme Court's order did not address the conflicting orders of the KSC and the LASC outside of the confines of statutory irreconcilability. Therefore, we do not address the conflicting orders of the KSC and the LASC.